OPINION
{¶ 1} Defendant-appellant, Bryant Mendenhall ("Mendenhall"), appeals the October 10, 2003 judgment entry of the Ashtabula County Court of Common Pleas sentencing him to serve a prison term of ten years. For the following reasons, we affirm the lower court's judgment entry of sentence.
 {¶ 2} The charges against Mendenhall stemmed from his involvement in the March 21, 2003 murder of Willie Smith ("Smith") at a home, 4012 Station Avenue, Ashtabula, Ohio. Smith, a drug dealer, was involved in a dispute with Mendenhall and his co-defendant regarding the selling of drugs of Station Avenue. The previous evening, Mendenhall and his co-defendants had assaulted Smith and Smith, in turn, had made threats of retaliation. At about 6:20 p.m. on March 21, 2003, Mendenhall and his co-defendants went to the house where Smith was staying, and confronted Smith on the front porch of the house. During the confrontation, co-defendant Richard Thomas Corpening shot Smith six times. Thereafter, Mendenhall fled the scene before turning himself into the police.
 {¶ 3} Mendenhall was indicted by the Ashtabula County Grand Jury on one count of Complicity to Aggravated Murder, with a gun specification, in violation of R.C. 2923.03 and 2903.01(A), and one count of Complicity to Murder, with a gun specification, in violation of R.C. 2923.03 and2903.02(A). On August 21, 2003, Mendenhall entered Alford pleas of guilty to Complicity to Voluntary Manslaughter, a first degree felony in violation of R.C. 2923.03 and 2903.03(A), and to Participating in a Criminal Gang, in violation of R.C. 2923.42(A), a felony of the second degree. See North Carolina v. Alford (1970), 400 U.S. 25.
 {¶ 4} The trial court sentenced Mendenhall to the maximum prison term of ten years for Complicity to Voluntary Manslaughter and to a prison term of five years for Participating in a Criminal Gang, to be served concurrently. Mendenhall timely appeals and raises the following assignment of error: "The lower court erred to the prejudice of defendant-appellant when it imposed a maximum sentence."
 {¶ 5} An appellate court reviews a felony sentence under a clear and convincing evidence standard of review. R.C. 2953.08(G)(2). An appellate court may not disturb a sentence unless the court "clearly and convincingly finds" that "the record does not support the sentencing court's findings," or that "the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a) and (b). Clear and convincing evidence is that evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 6} Pursuant to R.C. 2929.14(C), a "court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense * * * only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders * * *, and upon certain repeat violent offenders in accordance with division (D)(2) of this section." As interpreted by the Ohio Supreme Court, "[i]n order to lawfully impose the maximum term for a single offense, the record must reflect that the trial court imposed the maximum sentence based on the offender satisfying one of the listed criteria in R.C. 2929.14(C)." Statev. Edmonson, 86 Ohio St.3d 324, 329, 1999-Ohio-110.
 {¶ 7} In addition to stating its reasons for imposing the maximum sentence under R.C. 2929.14(C), "the trial court must also comply with R.C. 2929.19(B)(2)(d), which requires the trial court to give its reasons for imposing the maximum prison term." State v. Chike, 11th Dist. No. 2001-L-120, 2002-Ohio-6912, at ¶ 8; State v. Edmonson (Sept. 25, 1998), 11th Dist. No. 97-P-0067, 1998 Ohio App. LEXIS 4541, at *21 ("the court must submit findings of the operative facts and the reasoning as to why the court considered this to be one of the `worst forms of the offense'"), aff'd 86 Ohio St.3d 324, 1999-Ohio-110.
 {¶ 8} In the present case, the trial court found on the record that "[t]his is the worst form of * * * Complicity to Commit Voluntary Manslaughter." In support of this finding, the court stated: "A life was lost here. It was planned. These people [Mendenhall and his co-defendants] met on two days previously. They had met the day of the actual killing. They went in force. They prepared themselves. There were threats made to kill this Smith if he didn't get off of their street and do what they wanted. And this was not a spontaneous act that occurred at the house. Smith didn't back down. They killed him. And it's pretty clear that that was the plan."
 {¶ 9} Mendenhall contends that his complicity in Smith's killing was minimal: he "did not discharge the gun that killed the victim" and he "was just there." We disagree.
 {¶ 10} This court has previously considered and rejected this argument. We have held that "[t]he argument that appellant is less culpable because he was convicted as an accomplice ignores R.C. 2923.03(F), which provides: `Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as ifhe were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense. [Emphasis added]." State v. Whittenberger (Dec. 3, 1999), 11th Dist. No. 98-P-0047, 1999 Ohio App. LEXIS 5770, at *9. Therefore, as long as the gangland-style killing of Willie Smith constitutes one of the worst forms of voluntary manslaughter, it is within the court's discretion whether to impose the maximum sentence regardless of the fact that Mendenhall did not fire the fatal bullets.
 {¶ 11} The trial court also found "that Mr. Mendenhall poses the greatest likelihood of committing future crimes, and that's based on his serious Juvenile Court record and the record that he's accomplished already at the age of 21 as an adult." Based on the court's recitation of Mendenhall's record at the sentencing hearing, we agree that the maximum sentence for complicity was justified in the case.[1]
 {¶ 12} The First District Court of Appeals has recently held that the "fact" of previous juvenile-delinquency adjudications cannot be used to justify a finding regarding the likelihood of future crime under the "prior conviction" exception in Blakely v. Washington (2004), ___ U.S. ___. State v. Montgomery, 1st App. No. C-040190, 2005-Ohio-1018, at ¶13. The First District relies on case law for the proposition that "in Ohio * * * an adjudication that a juvenile is delinquent is not the same as a criminal conviction." Id. (citations omitted).
 {¶ 13} We note that, for the purpose of determining an offender's likelihood of committing future crimes, a court must consider an offender's delinquency adjudications as well as his history of criminal convictions. R.C. 2929.12(D)(2). In practice, trial courts routinely rely on juvenile records to impose non-minimum, maximum, and consecutive sentences. See, e.g., State v. Lamberson (March 19, 2001), 12th App. No. CA2000-04-012, 2001 Ohio App. LEXIS 1255, at *48.
 {¶ 14} Although juvenile proceedings have been characterized as "civil" rather than "criminal" proceedings, the Ohio Supreme Court has made clear that this distinction is of limited significance. "Whatever their label, juvenile delinquency laws feature inherently criminal aspects that we cannot ignore. * * * For this reason, numerous constitutional safeguards normally reserved for criminal prosecutions are equally applicable to juvenile delinquency proceedings. * * * Just as we cannot ignore the criminal aspects inherent in juvenile proceedings for purposes of affording certain constitutional protections, we also cannot ignore the criminality inherent in juvenile conduct that violates criminal statutes. * * * Whether the state prosecutes a criminal action or a juvenile delinquency matter, its goal is the same: to vindicate a vital interest in the enforcement of criminal laws." State v. Walls,96 Ohio St.3d 437, 2002-Ohio-5059, at ¶ 26 (emphasis sic) (internal citations omitted).
 {¶ 15} Therefore, a trial judge may consider an offender's juvenile record for the purposes of sentencing.
 {¶ 16} In Blakely, and earlier in Apprendi v. New Jersey (2000),530 U.S. 466, the United States Supreme Court held that "[other] than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 124 S.Ct. at 2536, citingApprendi, 530 U.S. at 490.
 {¶ 17} The Supreme Court has recently shed light upon the nature of the "prior conviction" exception in Shepard v. United States (2005),125 S.Ct. 1254. In Shepard, the court reconsidered what sort of evidence a sentencing judge may consider to establish the existence of prior "generic" convictions under the Armed Career Criminal Act ("ACCA"). Under prior case law, the factual basis of a prior conviction could be established "only by referring to charging documents filed in the court of conviction, or to recorded judicial acts of that court * * *, as in giving instruction to the jury." Id. at 1259, citing Taylor v. UnitedStates (1990), 495 U.S. 575. The Shepard court reaffirmed this prior case law, noting that it "anticipated the very rule later imposed [inApprendi and its progeny] for the sake of preserving the Sixth Amendment
right, that any fact other than a prior conviction sufficient to raise the limit of the possible federal sentence must be found by a jury * * *." Id. at 1262, citing Jones v. United States, 526 U.S. 227, 243 n. 6, and Apprendi, 530 U.S. at 490. In Shepard, the Supreme Court characterized the sort of evidence that may be considered to establish the facts of a prior conviction to include evidence that bears "the conclusive significance of a prior judicial record," such as "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." Id. at 1262-1263.
 {¶ 18} In light of the foregoing, we hold that delinquency adjudications bear "the conclusive significance of a prior judicial record" and, therefore, may be considered by a sentencing court under the "prior conviction" exception to the rule of Apprendi and Blakely.
 {¶ 19} Mendenhall's sole assignment of error is without merit. The ten-year sentence imposed by the Ashtabula County Court of Common Pleas is affirmed.
Rice, J., concurs.
WILLIAM M. O'NEILL, J., dissents with a Dissenting Opinion.
[1] The trial court stated: "At age 12 you first appeared before the Juvenile Court. Twenty-one I believe now. You were charged with Assault * * * in June of '94. In October of '94, you were adjudicated a delinquent based on a charge of Robbery. * * * Then again in October of '94, about three weeks later, you're back before Juvenile Court on a Theft charge. In November of '94, you're in there on another Robbery charge. On February 6th, 1995, a Probation Violation. You were in there in June of '95, and it says unknown code. I don't even know why you were there, but you got a ten-day commitment to DYS. Two months after that in August of '95 you were charged * * * with Delinquency on the basis of committing an Abduction. September, '95, the next month, you're back in there on a robbery based-delinquency charge. And all of these you were found guilty. And September [`97], it's Criminal Damaging and Endangering. Then in '97 in November, Parole Violation. July of '98, No Operator's license. * * * July of '98, Possession of Drugs, Tampering with Evidence, Carrying a Concealed Weapon. * * * October of '98, Attempted Rape, Menacing — or Aggravated Menacing. That was dismissed in accepting a plea on a different case. * * * October of the '98 [sic], you're back in Juvenile Court on an assault-based charge. July of '99, it's Fleeing and Eluding, Obstructing Justice. Truancy, Unauthorized Use of a Motor Vehicle. These charges apparently were dismissed because of a plea in another case. Same month, Violation of Parole. January of 2000, Felonious Assault — Serious Physical Harm, and you were committed again to DYS until you reached the age 21. * * * So I didn't even mention * * * the adult criminal record here. * * * [I]n June of '02, Aggravated Menacing charge was dismissed. * * * There was another charge on June 18th of Criminal Trespassing and Possession. I think you got a fine. And Possession of Drugs. I think the Criminal Trespassing was dismissed. You had another charge in July of '02, Possession of Marijuana. Disposition is unknown. Then you had in July of '02, you had charges of Assault, Riot, Aggravated Disorderly Conduct. The Riot charge, I believe, you were convicted of. The other two were dismissed. You had a Criminal Trespass conviction in August of '02. * * * August of '02, also Obstruction of Justice, Possession of Drugs [you] were convicted on. January, '03, Criminal Trespass Conviction. March 28th, '03, Assault charge that was dismissed in Eastern County Court. And then you've got the instant charges."