OPINION
{¶ 1} This appeal is submitted to this court on the record and the briefs of the parties. Appellant, Joseph L. Mitchell, appeals the judgment entered by the Lake County Court of Common Pleas. Mitchell was sentenced to an eighteen-month prison term for his conviction for possession of cocaine, a fourth degree felony in violation of R.C. 2925.11. For the following reasons, we affirm the trial court's judgment.
 {¶ 2} On April 9, 2003, Officers Simmons and Smith of the Painesville Police Department were participating in an undercover operation. The officers were in plain clothes driving an unmarked Mitsubishi Eclipse. About 11:40 p.m., they observed two individuals, a male and a female, standing on the sidewalk of the street. The male was later identified as Mitchell, and the female was Lisa Dunlap. As they drove by, Mitchell was talking on a cell phone, waving to the officers' vehicle and calling out something to the officers; however, Officer Simmons was unable to discern what Mitchell said. Officer Simmons testified that waving is a common practice among drug dealers who attempt to "flag down" vehicles to initiate drug transactions. The officers continued driving and called in a description of the individuals over the police radio.
 {¶ 3} Officers DeCaro and Armstrong of the Painesville Police Department were on regular patrol in a marked police cruiser and were wearing uniforms. They responded to Officer Simmons' radio call. The officers saw two individuals who matched the description given by Officer Simmons. Officer DeCaro testified that he had seen the same individuals a half hour earlier, standing on the same side of the street, about one quarter mile away. Officer Armstrong testified that the area was a "high drug area."
 {¶ 4} The officers parked their cruiser close to Mitchell and Dunlap, to investigate the situation. Upon exiting the vehicle, Officer DeCaro noticed Mitchell turn "as if to run," and reach his hand into the waistband area of his pants. Concerned that Mitchell may have a weapon, Officer DeCaro ordered Mitchell to show his hands. When Mitchell did not comply with his request, Officer DeCaro grabbed Mitchell's arm in an attempt to secure it. The resulting struggle brought Officer DeCaro and Mitchell to the ground. As Mitchell was falling, he dropped a pill bottle.
 {¶ 5} Officer Armstrong testified that the pill bottle definitely came from Mitchell. Officer Armstrong stated as soon as the pill bottle hit the ground, Dunlap reached down and picked it up, in an apparent attempt to conceal it. She claimed the bottle was hers. Officer Armstrong retrieved the bottle from Dunlap. On the bottle, "PMS formula" was written. Officer Armstrong opened the pill bottle and discovered what he believed was crack cocaine. In fact, testing confirmed the substance was 2.8 grams of crack cocaine.
 {¶ 6} Mitchell was indicted on one count of possession of cocaine. Mitchell pled not guilty to the charge. He filed a motion to suppress, which the trial court denied. A jury trial was held. The jury found Mitchell guilty of possession of cocaine. The trial court sentenced Mitchell to an eighteen-month prison term, the maximum for a fourth-degree felony.
 {¶ 7} Mitchell raises two assignments of error. His first assignment of error is:
 {¶ 8} "The trial court erred in denying the defense motion to suppress."
 {¶ 9} "Appellate review of a motion to suppress presents a mixed question of law and fact." State v. Burnside,100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence. Id., citing State v.Fanning (1982), 1 Ohio St.3d 19. Thereafter, the appellate court must independently determine whether those factual findings meet the requisite legal standard. Id., citing State v. McNamara
(1997), 124 Ohio App.3d 706, 707.
 {¶ 10} There are three categories in which encounters with the police are classified. The first is a consensual encounter, the second is a brief investigatory stop, and the third is formal arrest. State v. Long (1998), 127 Ohio App.3d 328, 333.
 {¶ 11} An officer may approach an individual in a street or other public place for the purposes of a consensual encounter. A consensual encounter is not a seizure, so no Fourth Amendment rights are involved. Florida v. Bostick (1991), 501 U.S. 429,434. The individual must be free to terminate the consensual encounter or decline the officer's request. Id. at 439. A Fourth Amendment seizure has taken place "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v.Mendenhall (1980), 446 U.S. 544, 554.
 {¶ 12} In an investigatory stop, an officer may briefly detain an individual if the individual is engaged in suspicious behavior. Terry v. Ohio (1968), 392 U.S. 1. To justify an investigatory stop, now known as a Terry stop, the officer must be able to "point to specific and articulable facts, which taken together with rational inferences with those facts, reasonably warrant an intrusion." Id. at 21.
 {¶ 13} With these three distinct encounters in mind, we address the facts of the case sub judice. When Officers DeCaro and Armstrong parked their vehicle and approached Mitchell and Dunlap, the situation was still one of a consensual encounter. They did not command Mitchell and Dunlap to stop. The record is unclear as to whether the officers activated their overhead lights. If the overhead lights were activated, the situation would probably fall within the realm of a Terry stop.
 {¶ 14} However, when Mitchell turned away from Officer DeCaro and placed his hand in his pants and Officer DeCaro demanded to see his hands, the situation escalated to that of a Terry stop. Due to the suspicious behavior and possibility that Mitchell might have a weapon, Officer DeCaro justifiably ordered Mitchell to show his hands. When Mitchell did not comply, Officer DeCaro attempted to secure his hand by grabbing his arm. At that moment, the situation had certainly risen to the level of a Terry stop.
 {¶ 15} We will address the Terry analysis from the point the police officers exited the vehicle. Prior to the direct encounter between the officers and Mitchell there was sufficient evidence for the officers to conduct a Terry stop. Mitchell and Dunlap were standing in the same general location for more that thirty minutes. It was late at night, in a high-drug area. Officer Simmons reported that Mitchell waved in a manner consistent with drug trafficking. Therefore, based on a totality of the circumstances, the officers had reasonable suspicion of criminal activity, i.e. illegal drugs, to justify a stop pursuant to Terry.
 {¶ 16} We will now address the issue of whether Officer Armstrong violated Mitchell's Fourth Amendment rights by opening the pill bottle.
 {¶ 17} "For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant." State v. Moore (2000),90 Ohio St.3d 47, 49, citing Katz v. United States (1967),389 U.S. 347, 357. However, there are several exceptions to the warrant requirement. State v. Brown (1992), 63 Ohio St.3d 349, 350
(citation omitted); State v. O'Hora, 11th Dist. No. 2000-L-134, 2002-Ohio-1608, 2002 Ohio App. LEXIS 1563, at *5.
 {¶ 18} We note that the pill bottle was not taken directly from Mitchell but was retrieved from Dunlap after Mitchell dropped it. An individual does not have standing to raise Fourth Amendment challenges to the search and seizure of property that has been voluntarily abandoned. State v. Freeman (1980),64 Ohio St.2d 291, 296 (citations omitted). However, in the case at bar, the evidence was clear that Mitchell did not drop the bottle until Officer DeCaro physically grabbed his arm. As such, there was no voluntary abandonment. To hold otherwise would encourage police officers to forcibly knock suspicious objects out of citizens' possession.
 {¶ 19} There are three general requirements that must be met for the "plain view" doctrine exception to the warrant requirement. State v. Halczyszak (1986), 25 Ohio St.3d 301,303, citing Coolidge v. New Hampshire (1967), 403 U.S. 443. "First, the initial intrusion must have been legitimate. Second, the police must have inadvertently discovered the object. Third, the incriminating nature of the object must be immediately apparent." Id.
 {¶ 20} As noted above, the initial intrusion by Officers DeCaro and Armstrong was legitimate, as they had reasonable suspicion of criminal activity to stop and talk to Mitchell and Dunlap. Likewise, the pill bottle was inadvertently discovered, as it fell out of Mitchell's hand while Officer DeCaro was attempting to restrain him. Therefore, the first and third prongs of the plain view test are satisfied. The remainder of this analysis will focus on the second prong, whether the incriminating nature of the pill bottle was immediately apparent.
 {¶ 21} "The `immediately apparent' requirement of the `plain view' doctrine is satisfied when police have probable cause to associate an object with criminal activity." State v.Halczyszak, 25 Ohio St.3d 301, paragraph three of the syllabus. "Probable cause exists when `there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" State v. Vaughn (June 27, 1997), 11th Dist. No. 96A-0063, 1997 Ohio App. LEXIS 2817, at *10, quoting State v.George (1989), 45 Ohio St.3d 325, paragraph one of the syllabus.
 {¶ 22} In State v. Vaughn, this court held that the police officer had probable cause to open a pill bottle where: the defendant matched the description given by an anonymous tip, the area was a high drug area, the defendant refused to keep his hands in the location instructed by the officer, and the officer testified that he had discovered crack cocaine in similar bottles in the past. 1997 Ohio App. LEXIS 2817, at *12-13. In State v.Hapney, the Fourth Appellate District held there was not probable cause to open a film container. State v. Hapney, 4th Dist. Nos. 01CA30 and 01CA31, 2002-Ohio-3250, at ¶ 40. In its analysis, the Fourth District noted that the Ninth Appellate District held an officer has probable cause to open a pill bottle based, in part, on the officer's testimony that such containers were commonly used to carry illegal drugs. Id. at ¶ 39, citingState v. Lee (1998), 126 Ohio App.3d 147. On the other hand, the court noted the Second Appellate District held an officer did not have probable cause to open a film canister, where no evidence was presented showing the officer had probable cause to believe the container contained contraband. Id. at ¶ 38, citingState v. Osborne (1994), 99 Ohio App.3d 577. In addition, the Fourth District held:
 {¶ 23} "[I]n the case at bar, no evidence exists to show that the trooper possessed probable cause that the film container contained contraband. Unlike the situation in [State v. Lee], the officer in the case sub judice did not offer testimony to the trier of fact that, based upon his prior years of experience, he knew film containers were used to transport illegal drugs." Id. at ¶ 40.
 {¶ 24} In the instant matter, Officer Armstrong testified that he has seen crack cocaine transported in "Chapstick containers, Tick Tac containers, film containers and pill bottles." Officer Armstrong had probable cause to believe the pill bottle contained contraband based on this testimony and the remaining facts of the situation, including: (1) Mitchell and Dunlap were in the same general location for more that one half hour, (2) the area was a high-drug area; (3) Mitchell tried to conceal his hands and did not comply with Officer DeCaro's request to show them, and (4) Mitchell attempted to "flag down" Officers Simmons and Smith. We note these factors constituting probable cause are very similar to the factors this court found sufficient in Vaughn.
 {¶ 25} Officer Armstrong had probable cause to open the pill bottle.
 {¶ 26} Finally, we will address Mitchell's constitutional argument. Mitchell claims a Painesville Municipal ordinance that prohibits "waving" is unconstitutional. Mitchell raised this argument at the trial court level. However, the trial court denied his motion to suppress with minimal analysis and did not address the constitutional challenge. For the following reasons, we decline to address the constitutionality of the ordinance.
 {¶ 27} First, Mitchell was not charged with violating the ordinance. He was only charged with possession of cocaine.
 {¶ 28} Next, none of the officers testified that the ordinance was a basis for the investigation. Rather, the officers testified that Mitchell's actions were consistent with drug trafficking. Accordingly, the officers decided to question Mitchell and Dunlap under the purview of a consensual encounter and/or a Terry stop on the reasonable suspicion of illegal drug activity.
 {¶ 29} Mitchell's first assignment of error is without merit.
 {¶ 30} Mitchell's second assignment of error is:
 {¶ 31} "The trial court erred in sentencing the defendant by imposing a maximum sentence."
 {¶ 32} Pursuant to R.C. 2953.08(G), a reviewing court will not disturb a defendant's sentence unless it finds, "by clear and convincing evidence, that the record does not support the sentence or that the sentence is otherwise contrary to law."State v. Fitzpatrick (Dec. 2, 2000), 11th Dist. No. 99-L-164, 2000 Ohio App. LEXIS 5608, at *8.
 {¶ 33} R.C. 2929.14(C) applies to the imposition of maximum sentences and provides:
 {¶ 34} "Except as provided in division (G) of the section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 35} In addition, R.C. 2929.19 provides, in part:
 {¶ 36} "(B)(2) The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
 {¶ 37} "* * *
 {¶ 38} "(d) If the sentence is for one offense and it imposes a prison term for the offense that is the maximum prison term allowed for that offense by division (A) of section 2929.14 of the Revised Code, its reasons for imposing the maximum prison term[.]"
 {¶ 39} Thus, "[i]n order to lawfully impose the maximum term for a single offense, the record must reflect that the trial court imposed the maximum sentence based on the offender satisfying one of the listed criteria in R.C. 2929.14(C)." Statev. Edmonson, 86 Ohio St.3d 324, 329, 1999-Ohio-110. In addition, R.C. 2929.19(B)(2)(d) requires a trial court to make a finding that sets forth its "`reasons for imposing the maximum prisonterm.'" (Emphasis in original.) Id. at 328.
 {¶ 40} In State v. Comer, the Supreme Court of Ohio held that a trial court must make its findings in support of the imposition of consecutive sentences, pursuant to R.C.2929.19(B)(2)(c), on the record at the sentencing hearing. Statev. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, at paragraph one of the syllabus. Subsequent decisions have established that theComer requirements also apply to maximum sentences. State v.Newman, 100 Ohio St.3d 24, 2003-Ohio-4754, at ¶ 1; see, also,State v. Perry, 7th Dist. No. 02 CA 182, 2003-Ohio-7000, at ¶ 10-13.
 {¶ 41} At the sentencing hearing, the trial court made the following findings:
 {¶ 42} "And I am going to sentence you to the maximum rather than sentence you to 17 months. I am going to go the extra month so that I can state on the record that you are a dangerous individual. I find you to be a dangerous individual. Under 2929.14(C), I cannot find that you committed the worst form of the offense but I can find that circumstances were quite aggravated and I also find as follows: That you, sir, pose the greatest likelihood of committing future crimes and so I invoke that provision of 292914(C), to hand down the maximum sentence."
 {¶ 43} In support of its conclusion that Mitchell posed the greatest likelihood of committing future crimes, the trial court noted Mitchell's extensive criminal record and the fact that Mitchell has served three prior prison terms. In fact, the record demonstrates Mitchell had been released from his most recent prison term less than three months before committing the instant offense. The trial court found Mitchell has not responded favorably to previous sanctions and that he has a disregard for lawful authority. This court has repeatedly held that, under the United States Supreme Court precedents of Apprendi v. NewJersey (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, and Blakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531,159 L.Ed.2d 403, a sentencing court may consider an offender's record of prior convictions in making the finding that the offender poses the greatest likelihood of committing future crimes. See State v. Colbert, 11th Dist. No. 2003-A-0114, 2005-Ohio-2524, at ¶ 11; State v. Mendenhall, 2003-A-0116, 2005-Ohio-2525, at ¶ 11; State v. Reen, 11th Dist. No. 2003-A-0077, 2005-Ohio-2067, at ¶ 16.
 {¶ 44} On appeal, Mitchell argues that the trial court should not have relied on his prior convictions and prison terms because they were not drug offenses. We find this argument unpersuasive. An individual's prior felony criminal record is relevant when determining whether that individual is likely to commit future crimes. The crimes do not need to be identical.
 {¶ 45} The trial court complied with the sentencing statutes when it provided its findings in support of its imposition of the maximum sentence.
 {¶ 46} Mitchell's second assignment of error is without merit.
 {¶ 47} The judgment of the trial court is affirmed.
O'Toole, J., concurs, O'Neill, J., dissents with a Dissenting Opinion.