[Cite as *State v. Taylor*, 2016-Ohio-7745.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2016-A-0022** |
| RODNEY P. TAYLOR, JR., | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2015 CR 00522.

Judgment: Reversed and remanded.

*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellant).

*Joseph A. Pfundstein,* P.O. Box 46449, Cleveland, OH 44139 (For Defendant-Appellee).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellant, the state of Ohio, appeals the judgment of the Ashtabula County Court of Common Pleas granting the motion to suppress filed by appellee, Rodney P. Taylor, Jr. Appellee did not file an appellate brief. At issue is whether the trial court erred in suppressing the heroin appellee hid in a police cruiser while he was being detained. For the reasons that follow, we reverse and remand.

{¶2} On October 20, 2015, appellee was charged in a two-count indictment with possession of heroin, a felony of the first degree; and tampering with evidence, a felony of the third degree. Appellee pled not guilty and subsequently filed a motion to suppress evidence.

{¶3} At the suppression hearing, Ohio State Highway Patrol Trooper Brandon Miller testified that on September 10, 2015, at about 4:50 p.m., he was observing eastbound traffic on I-90 when he saw appellee following a car too closely. Trooper Miller pulled onto the highway and saw appellee was still following that vehicle too closely. Trooper Miller stopped appellee for this traffic violation.

{¶4} After appellee pulled over, Trooper Miller approached him. Trooper Miller immediately smelled the odor of raw marijuana emanating from appellee's car and asked appellee for his driver's license. Appellee handed the trooper car rental papers and said the car was rented by his girlfriend. As Trooper Miller went through the papers, he saw marijuana debris between the pages.

{¶5} Trooper Miller told appellee he smelled marijuana and saw pieces of marijuana in his papers and said he was going to search his car. He asked appellee to exit his car; brought appellee to his cruiser; frisked him, with negative results; and then secured appellee in the back of his cruiser.

{¶6} Trooper Miller called for backup. Trooper Semanski arrived within minutes and assisted Trooper Miller in searching appellee's car, with negative results. The search was completed 24 minutes after appellee was stopped.

{¶7} After appellee's car was searched, the troopers moved appellee from Trooper Miller's cruiser to Trooper Semanski's cruiser so Trooper Miller could fill out a

citation/warning as he reviewed the video of appellee taken while he was seated in the back of his cruiser. While watching the video, Trooper Miller saw appellee "moving around a lot." Trooper Miller testified:

{¶8} He was manipulating in his butt area quite a bit, with his butt off the seat for a longer period of time. Not like he was itching anything. * * * [H]is hands were down there by his butt, he was like making wincing noises. Like almost in pain, maybe. And then at which point he pulled his hands out after doing that for awhile * * *.

{¶9} Meanwhile, Trooper Miller had asked Trooper Dennison to respond because Trooper Semanski had to leave for road duty. When Trooper Dennison advised he was en route, Trooper Miller told him to continue coming because "it was clear from [his] observations that [appellee] had something concealed." Shortly after Trooper Dennison's arrival, the troopers moved appellee to Trooper Dennison's car so Trooper Semanski could leave.

{¶10} Trooper Miller said that, based on his training, experience, and review of the video, he was "confident" appellee had concealed something so he decided he needed to have a body cavity search performed on him. As a result, Trooper Miller called the Lieutenant on duty to obtain a body cavity search warrant for appellee. Trooper Miller talked to the Lieutenant for quite awhile, explaining what had taken place. The Lieutenant said that he did not want to proceed with a body cavity warrant for marijuana. Instead, he said that since appellee was on parole, appellee was subject to being searched by his parole officer so he, i.e., Trooper Miller, should call his parole officer to have him search appellee. Trooper Miller then called appellee's parole officer, but he said he could not respond because he was too far away. As a result, Trooper Miller issued a warning for following too closely and released appellee at 5:40 p.m. He

3

had been held an additional 24 minutes after the troopers completed the search of appellee's car.

{¶11} Trooper Benjamin Dennison testified that when he arrived on scene, appellee was detained in the back of Trooper Semanski's cruiser. Shortly thereafter, Trooper Semanski had to leave for road duty so appellee was placed in Trooper Dennison's car. After Trooper Miller released appellee, Trooper Dennison performed a brief sweep of the back of his cruiser where appellee had been sitting, with negative results.

{¶12} As Trooper Dennison was driving away from the scene, he felt something was not right. He pulled over and watched the video of the back seat area of his cruiser taken while appellee was sitting there. Trooper Dennison saw appellee going down his pants. He then saw one of appellee's arms go underneath the metal divider in his cruiser that separates the front seat from the back.

{¶13} Trooper Dennison then called Trooper Miller and told him what he had seen on the video and told him to find appellee's car. Trooper Miller told Trooper Dennison to search his cruiser for contraband. Trooper Dennison then pulled into the nearest driveway, which was a church. He got out of his cruiser and moved his seat forward to check the area under the metal divider where he saw appellee reaching. Trooper Dennison found a baggie containing what he believed to be a packet of heroin tucked under the metal divider. He then called Trooper Miller and told him he found felony amounts of narcotics in his cruiser.

{¶14} Shortly thereafter, Trooper Miller stopped appellee the second time and arrested him for possession of narcotics and tampering with evidence. Trooper

4

Dennison then responded to the scene and field-tested the contents of the baggie, which tested positive for heroin.

{¶15} The trial court found that appellee's initial stop and the search of his vehicle were authorized, but suppressed the heroin on the ground that the troopers unreasonably prolonged the stop beyond its original purpose, as extended by the search of appellee's car, by detaining him for the additional 24 minutes after the search of his vehicle was completed. The court found appellee's detention after the vehicle search was completed was unlawful and, therefore, his "abandonment" of the heroin during that time was not voluntary.

{¶16} The state appeals the trial court's ruling, asserting the following for its sole assignment of error:

{¶17} "The trial court erred in granting appellee's motion to suppress."

{¶18} Appellate review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. During a hearing on a motion to suppress evidence, the trial court acts as the trier of fact and, as such, is authorized to resolve factual questions and assess the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). An appellate court reviewing a ruling on a motion to suppress is bound to accept the trial court's findings of fact where they are supported by competent, credible evidence. *State v. Guysinger*, 86 Ohio App.3d 592, 594 (4th Dist.1993). Accepting these facts as true, the appellate court reviews de novo whether the facts meet the applicable legal standard without deference to the trial court's conclusion. *State v. Djisheff*, 11th Dist. Trumbull No. 2005-T-0001, 2006-Ohio-6201, ¶19.

{¶19} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1 (1968). Generally, "[f]or a search or seizure to be reasonable under the Fourth Amendment, it must be based on probable cause and executed pursuant to a warrant." *State v. Moore*, 90 Ohio St.3d 47, 49 (2000). However, as this court has previously noted, "there are several exceptions to the warrant requirement." *State v. Mitchell*, 11th Dist. Lake No. 2004-L-071, 2005-Ohio-3896, ¶17. An investigative stop, or Terry stop, is a common exception to the Fourth Amendment warrant requirement. *Terry, supra*. Pursuant to *Terry*, officers may briefly stop and detain an individual, without an arrest warrant and without probable cause, in order to investigate a reasonable and articulable suspicion of criminal activity. *Id*. "'The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances'" as "'viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.'" *State v. LeClair*, 12th Dist. Clinton No. CA2005-11-027, 2006-Ohio-4958, ¶9, quoting *State v. Freeman*, 64 Ohio St.2d 291 (1980), syllabus, and *State v. Bobo*, 37 Ohio St.3d 177, 179 (1988).

{¶20} The state obviously does not take exception to the trial court's finding that Trooper Miller was authorized to stop appellee for following a vehicle too closely in violation of R.C. 4511.34. An officer's observation of any traffic law violation constitutes sufficient grounds to stop the vehicle observed violating the law. *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12 (1996). In *Erickson*, the Supreme Court of Ohio held that a traffic stop based on probable cause is not unreasonable, and an officer who makes a traffic stop based on probable cause acts in an objectively reasonable manner. *Id*. at 11.

6

Further, the Court held that where a police officer stops a vehicle based on probable cause that a traffic violation has occurred, the stop is not unreasonable under the Fourth Amendment even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more serious criminal activity. *Id.*

{¶21} Further, this court has held that where an officer witnessed a violation of R.C. 4511.34, following too closely, he had probable cause to stop the defendant and cite him. *State v. Graham*, 11th Dist. Portage No. 2005-P-0096, 2006 Ohio App. LEXIS 4128, *8 (Aug. 11, 2006).

{¶22} Where a stop is based on a reasonable suspicion that a motorist has committed a traffic violation, *an officer may delay the motorist for a time period sufficient to issue a citation or a warning*. *State v. Eggleston,* 11th Dist. Trumbull No. 2014-T-0068, 2015-Ohio-958, ¶21. For example, this delay may include the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates. *Id.* Further, in determining whether an officer completed these tasks within a reasonable period of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation. *Id.* The circumstances must be "'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'" *State v. Colby*, 11th Dist. Portage No. 2002-P-0061, 2004-Ohio-343, ¶21, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991). Further, *if the circumstances surrounding a stop produce a reasonable suspicion of some other illegal activity, the officer may detain the motorist for as long as that new articulable and reasonable*

7

*suspicion continues. State v. Jones*, 8th Dist. Cuyahoga No. 100300, 2014-Ohio-2763, ¶21.

**{¶23}** Likewise, the state does not challenge the trial court's finding that the troopers were authorized to search appellee's car. Upon approaching appellee's vehicle, Trooper Miller detected the odor of marijuana coming from it. Further, when the trooper asked to see appellee's driver's license, appellee gave him rental papers for the car, which contained marijuana debris. In *Moore, supra*, the Ohio Supreme Court held, "the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement." *Id.* at 48.

**{¶24}** However, the state challenges the trial court's finding that the 24 minutes appellee was detained after the search of his car was completed unreasonably prolonged the stop, as a result of which his continued detention was unlawful and his abandonment of the heroin was not voluntary. In support of this finding, the trial court relied on the Eighth District's decision in *State v. Taylor*, 8th Dist. Cuyahoga No. 94853, 2011-Ohio-1554. In *Taylor*, the detective stopped an SUV for impeding traffic. The detective removed the driver and Taylor, who was in the front passenger seat. The detective handcuffed the driver, but was unable to handcuff Taylor because he did not have an additional pair of handcuffs. He placed both women in the back of his cruiser, but neither was arrested. He did not pat down either woman, but instead called for a female officer to respond to the scene for that purpose. He said that neither female appeared to have a weapon, but he noticed that Taylor had a bulge in her shirt. The driver and Taylor were detained for 30 minutes until the female officer arrived to pat

8

down the women. When the detective removed the two suspects from the police car, he noticed there was no longer a bulge in Taylor's shirt. Upon inspection of the rear seat, he found a baggie containing suspected crack cocaine hidden where Taylor had been sitting. The trial court denied Taylor's motion to suppress, but the Eighth District reversed.

{¶25} The appellate court in *Taylor* held that, while the detective said he asked for a female officer to come to the scene *to pat the women down for weapons*, the facts showed he detained them for the female officer *to search them*. The court said this conclusion was supported by the fact that the detective did not suspect that Taylor or the driver had a weapon and he put Taylor in the back of the cruiser without handcuffing her. *Id.* at ¶25. The court stated that since the female officer was, in effect, called to conduct a search of Taylor, not to perform a pat-down for weapons, a search would have to be supported by probable cause. *Id.* at ¶28. The court held that Taylor's detention to effectuate a search was unlawful and, thus, her abandonment of the crack cocaine was not voluntary, making the drugs subject to suppression. *Id.* at ¶31.

{¶26} The Eighth District in *Taylor* held that when evidence left by a defendant is discovered in a police cruiser after a legal arrest or detention, the evidence was voluntarily abandoned. *Id.* at ¶29, citing *United States v. Maryland*, 479 F.2d 566, 568 (5th Cir.1973); *United States v. Wai-Keung*, 845 F. Supp. 1548, 1559 (S.D.Fla.1994). However, when evidence is left in a cruiser after an illegal arrest or detention, it cannot be voluntarily abandoned, but, rather, is a response to unlawful police conduct. *Id.*, *citing Maryland, supra; Lawrence v. Henderson,* 478 F.2d 705, 708 (5th Cir.1973). The Eighth District in *Taylor* held that once the detective determined that she did not have a

9

weapon, a purported pat-down could not be used to justify a search of her person. *Id.* at ¶33. Thus, the court held there was no reasonable suspicion of criminal activity justifying her detention, much less one that lasted 30 minutes. *Id.*

{¶27} However, *Taylor* is factually distinguishable and thus inapposite here. Therefore, the trial court, in concluding that appellee did not voluntarily abandon the heroin, improperly applied *Taylor*. While the detective in *Taylor* had no legitimate grounds to detain her, in the present case, the troopers had authority to stop appellee and to search his car. Further, Trooper Miller was authorized to detain appellee while he prepared and issued a citation or warning to him. *Eggleston, supra; Colby, supra.* While preparing the citation/warning, Trooper Miller viewed the video and nothing in the record shows Trooper Miller took more time than necessary to watch it. Thus, appellee's detention for that period of time was objectively reasonable. This accounted for part of the additional 24 minutes after the vehicle search, during which the court found appellee was unlawfully detained.

{¶28} Further, Trooper Miller's viewing of the video gave him reasonable suspicion/probable cause to believe appellant was committing other illegal activity, i.e., that appellee was concealing contraband on/in his person. *See State v. Wesley*, 5th Dist. Stark No. 1999CA00226, 2000 Ohio App. LEXIS 1280, *10-*11 (Mar. 27, 2000). After viewing the video, Trooper Miller said he was "confident" appellee had concealed something so the trooper decided to obtain a body cavity search warrant. Thus, Trooper Miller was authorized to detain appellee as long as necessary to obtain the warrant. It is undisputed that Trooper Miller spent the balance of the additional 24 minutes attempting to do this by talking to his Lieutenant and appellee's parole officer.

10

Appellee's detention for this period was thus likewise objectively reasonable. As a result, the entire additional 24 minutes during which appellee was detained was accounted for and his detention during this period was reasonable.

{¶29} In view of the foregoing, the trial court erred in finding that Trooper Miller "acknowledges that he had no basis to conduct a warrantless search [of appellee]." As noted, Trooper Miller had probable cause to search appellee, but understood he needed a body cavity search warrant to gain access to the private area in question. Contrary to the trial court's finding, the fact that Trooper Miller's efforts to obtain the warrant were ultimately unsuccessful – due to circumstances beyond his control – is irrelevant to the analysis.

{¶30} Further, while the trial court implied Trooper Miller did not diligently conduct his investigation while preparing the citation/warning and consulting with the other officials, there is no evidence in the record supporting such finding. The court's finding was thus not supported by competent, credible evidence and we are not bound to accept it. In fact, in light of everything Trooper Miller accomplished in that additional 24 minutes, it is difficult to imagine how his investigation could have been more diligently pursued.

{¶31} We therefore hold that appellee's continued detention for 24 minutes after the search of his vehicle was completed was justified by the circumstances as they unfolded, making appellee's abandonment or disposal of the heroin in Trooper Dennison's cruiser voluntary and not subject to suppression.

{¶32} Moreover, appellee's subsequent arrest was supported by probable cause. Trooper Dennison testified that, shortly after appellee left the scene, he watched

11

the video of appellee taken while he was in the back seat of his cruiser. He saw appellee going down his pants and then reach underneath the metal divider, apparently attempting to hide contraband. Trooper Dennison then searched that area of his cruiser and found the baggie with suspected narcotics. This information provided Trooper Dennison with probable cause to believe that appellee had been in possession of narcotics and had attempted to conceal them. Trooper Miller testified that five minutes after appellant was released, Trooper Dennison called and told him he found felony amounts of drugs. Thereafter, Trooper Miller arrested appellee.

{¶33} The state's assignment of error has merit and is therefore sustained.

{¶34} For the reasons stated in this opinion, it is the order and judgment of this court that the judgment of the Ashtabula County Court of Common Pleas is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.


DIANE V. GRENDELL, J.,

TIMOTHY P. CANNON, J.,

concur.