OPINION
{¶ 1} Appellant, James R. Handwork, appeals from his convictions on three counts of murder. We affirm.
 {¶ 2} On August 12, 2002, appellant left work and drove to a bar, Duke's Place, in Alliance, Ohio. He arrived at approximately 1:30 p.m. Appellant drank several beers throughout the course of the afternoon and evening. He also approached several women at the bar seeking a date.
 {¶ 3} Lasonya Young ("Young") arrived at Duke's Place in the early evening hours of August 12, 2002. While there, she and appellant talked and appellant bought Young drinks. At approximately 8:00 or 9:00 p.m. witnesses saw Young get into a car driven by appellant.
 {¶ 4} On August 13, 2002, a hunter found Young's body in a remote parking lot on German Church Road, in Portage County, Ohio. Young was wearing the same clothes she was seen wearing at Duke's Place. Investigators also found a Pittsburgh Steelers ring near her body.
 {¶ 5} Investigators photographed Young's body and the ring and took these photographs to the Alliance Police Department to seek an identification of the body.[1] Alliance police officers identified the body as that of Lasonya Young; these officers also told Portage County investigators that Young frequented Duke's Place.
 {¶ 6} Portage County investigators interviewed patrons of Duke's Place. Several witnesses described seeing a person later identified as appellant in the bar on August 12, 2002. Investigators also learned a witness saw a car drive around the block near Duke's Place seven times on the evening of August 12 and saw Young get into this car. The witness memorized the vehicle's license plate. Investigators identified this vehicle as belonging to appellant, whom investigators eventually located and interviewed. Appellant also gave investigators permission to search his vehicle.
 {¶ 7} Appellant made several statements to investigators. He first denied any knowledge of, or involvement in, the crime. After investigators showed him pictures of Young's body and the ring, he admitted being with Young on the evening of August 12. He claimed he had met Young at a bar, that Young had propositioned him, he had declined, but he had given Young a ride to another bar.
 {¶ 8} Appellant made a third statement in which he admitted giving Young a ride in his car and fighting with her over a twenty-dollar bill. Appellant stated he had left the bar with Young and that they had smoked marijuana at a Price Road location. Appellant also admitted to wearing a Pittsburgh Steelers ring. Appellant claimed that during the fight Young had bit his stomach and that he had punched Young a couple of times, knocked her to the ground, and that he then drove off.
 {¶ 9} Appellant made a fourth statement where he admitted he and Young had two altercations: one at the Price Road location and one on German Church Road. Appellant stated Young pulled a pocketknife and swung it at him. Appellant stated that during the altercation he put Young in a headlock, where she bit his stomach. Appellant stated he hit Young in the face and caused her to stop biting him. When she quit biting he wrestled the knife from her and cut Young's throat. He then stated he stabbed Young, left her lying on the ground, and drove away. Appellant stated he threw the knife out the window as he drove.
 {¶ 10} In his fifth statement, appellant admitted having sex with Young prior to the fight over the twenty-dollar bill. Appellant then stated Young bit him and he started punching her. Young released her bite and he tried to gain possession of the knife from her. Young hit him in the face. Appellant then gained control of the knife, cut Young's throat, and stabbed her several times.
 {¶ 11} Appellant gave a sixth statement in which he admitted washing his car with bleach and water.
 {¶ 12} Appellant was arrested and subsequently indicted on three counts of murder; to wit — purposely causing the death of another, R.C. 2903.02(A); causing the death of another as a proximate result of committing felonious assault, R.C.2903.02(B), 2903.11(A)(1); and causing the death of another as a proximate result of committing felonious assault, R.C.2903.02(B), 2903.11(A)(2). A jury convicted appellant on all counts. Counts two and three merged with one for purposes of sentencing and the trial court sentenced appellant to a term of fifteen years to life. Handwork appeals from his convictions raising four assignments of error:
 {¶ 13} "[1.] The trial court erred to the prejudice of the appellant, in overruling defense's objections to the admission of state's photographic exhibits or mistakenly admitting photographic exhibits after sustaining defense's objections, when the prejudicial value outweighed the probative value and or the pictures were cumulative or repetitious.
 {¶ 14} "[2.] The court erred to the prejudice of appellant, by allowing prosecutorial misconduct and not declaring a mistrial sua sponte or overruling appellant's motions for a mistrial.
 {¶ 15} "[3.] The trial court erred to the prejudice of appellant, by excluding certain character evidence of the victim.
 {¶ 16} "[4.] The trial court erred to the prejudice of appellant, when the jury rendered a guilty of murder verdict rather than a voluntary manslaughter verdict which is against the manifest weight of [the] evidence."
 {¶ 17} In his first assignment of error, appellant challenges the trial court's admission of nineteen photographs.[2] He argues that these photographs were of little probative value, gruesome, highly prejudicial, repetitious, or cumulative.
 {¶ 18} We review a trial court's decision to admit or exclude evidence only for an abuse of discretion. State v. Slagel
(1992), 65 Ohio St.3d 597, 601-602. "Abuse of discretion" means more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.State v. Adams (1980), 62 Ohio St.2d 151, 157-158, citingSteiner v. Custer (1940), 137 Ohio St. 448; Conner v. Conner
(1959), 170 Ohio St. 85.
 {¶ 19} Evid.R. 403(A) provides, "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 20} Evid.R. 403(B) states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."
 {¶ 21} We first note that the fact that "* * * a photograph is gruesome or horrendous is not sufficient to render it per se inadmissible." State v. Maurer (1984), 15 Ohio St.3d 239, 265. Further, "[t]he fact that appellant stipulated the cause of death does not automatically render the photographs inadmissible." Id.
 {¶ 22} Here, the photographs admitted by the trial court, with the exception of state's exhibit 55, depicted the scene where the body was discovered, the victim's body at the scene of the crime, and the autopsy. All of these photographs were used to illustrate testimony of the investigating officers and medical experts; therefore, they were relevant and not cumulative.
 {¶ 23} Further, although some of the photographs were gruesome, their probative value was not substantially outweighed by the danger of unfair prejudice. The state was required to prove beyond a reasonable doubt that appellant purposely killed Young, R.C. 2903.02(A); or that he caused her death as a proximate result of committing felonious assault under R.C.2903.11(A)(1) or (2). The number and location of Young's injuries was probative of these issues. Therefore, the trial court did not err in admitting photographs of the scene, photographs of Young's body at the scene, or the autopsy photographs.
 {¶ 24} State's exhibit 55 was a family picture of Young. Young's father identified this photograph. Appellant's counsel failed to object to the admission of this exhibit; therefore, appellant has waived any error regarding its admission. State v.Higgins (1990), 61 Ohio App.3d 414, 420.
 {¶ 25} Appellant's first assignment of error is without merit.
 {¶ 26} In his second assignment of error, appellant argues the prosecutor engaged in misconduct during closing argument and that two witnesses made comments necessitating a mistrial. We disagree.
 {¶ 27} Handwork challenges the following statements made by the prosecutor during closing arguments:
 {¶ 28} "I told you in opening statement, and the Judge read to you from the indictment in this case about murder in the State of Ohio and the different ways that murder can be proven in this State. And the Grand Jury indicted three different counts of murder, meaning that this defendant committed this murder in three different ways under the laws of this state."
 {¶ 29} Appellant's counsel objected to this statement and the trial court sustained the objection.
 {¶ 30} Also during close, the prosecutor argued:
 {¶ 31} "[Defense counsel] in opening statement talked to you about the defendant's rage. Well, except for his statement in opening, the word rage has never come from that witness stand. There's been no testimony about any rage by the defendant." The trial court overruled defense counsel's objection to this statement. On appeal, Handwork argues that this was an improper comment on his failure to testify.
 {¶ 32} In rebuttal, the prosecutor referred to the testimony of Colleen Clark, a women appellant had approached at the bar, grabbed, tried to kiss, and to whom appellant had passed a note. Defense counsel had argued during close that her testimony was irrelevant.
 {¶ 33} The prosecutor stated:
 {¶ 34} "Colleen Clark. What an interesting witness she was. He grabbed her in the bar, tried to kiss her, passed her the note * * *. What a lucky lady she is. Are you thinking the same thing I was? She left the bar. This defendant cruised around the block several times looking at her and motioned her. What a lucky lady she was to be sitting there in that witness box. Because if she had taken him up on his offer you would have been looking at her picture up there."
 {¶ 35} Handwork's counsel objected to this and the trial court sustained the objection.
 {¶ 36} When reviewing a claim of prosecutorial misconduct, we determine whether the prosecutor's remarks were indeed improper, and if so, whether the improper remarks adversely affected a substantial right of the accused. State v. Tumbleson (1995),105 Ohio App.3d 693,700, citing State v. Lott (1990),51 Ohio St.3d 160,165;State v. Black (1991), 75 Ohio App.3d 667,674. "In order to determine whether a prosecutor's remarks are prejudicial to the accused, the entire closing argument must be reviewed." Id., citing State v. Keenan (1993),66 Ohio St.3d 402,410. The prosecution has wide latitude in closing arguments. Id. "Even if a prosecutor's statements are improper, reversal for prosecutorial misconduct is warranted only if it `permeates the entire atmosphere of the trial.'" Id., quoting United States v.Warner (C.A.6, 1992), 955 F.2d 441, 456.
 {¶ 37} In the instant case, the prosecutor's characterization of the indictment and reference to Colleen Clark were improper. Nonetheless, we conclude that these remarks did not adversely affect any of appellant's substantial rights. The trial court sustained defense counsel's objections to each of these comments. Further, the court instructed the jury as to the purpose of the indictment and that closing arguments are not evidence.
 {¶ 38} With respect to the comment regarding Clark, the prosecutor's statement arguably forecloses appellant's contention that he was guilty of at most, voluntary manslaughter; however, because we conclude in our analysis of appellant's final assignment of error that the jury's verdict convicting appellant of murder was not against the manifest weight of the evidence, this error was harmless.
 {¶ 39} The prosecutor's comment regarding the lack of testimony of any rage on the part of appellant, while walking a thin line, was not improper. The prosecutor was simply rebutting defense counsel's contention made during opening statement that the defendant would establish that he was in a state of rage at the time of the homicide, and therefore, should be convicted of only voluntary manslaughter. There is no allusion to the defendant's failure to testify, but rather a comment on the lack of evidence. Evidence as to rage could have come from sources other than the direct testimony of appellant.
 {¶ 40} Handwork also argues that two statements made by witnesses were improper and necessitated a mistrial. During direct examination Sheriff Duane Kaley, when asked to identify the defendant stated, "He would be the gentleman in the — I don't know whether — the lights are out — yellow or white shirt, he's got a tie on, checkered tie, would be between the two public defenders there." Prior to trial the court had instructed the state not to refer to defense counsel as public defenders and had ordered the state to so instruct its witnesses. Defense counsel objected and moved for a mistrial. The trial court overruled the motion.
 {¶ 41} During direct examination during the defense case, the following exchange took place between defense counsel and Detective Wonner of the Alliance Police Department:
 {¶ 42} "Q. Now you were part of the interview of James Handwork which occurred on August 22nd, 2002?
 {¶ 43} "A. Yes sir.
 {¶ 44} "Q. And that would have included Sheriff Kaley and it identifies you as well, looks like just the two of you and Mr. Handwork, is that correct?
 {¶ 45} "A. There was a gentleman with the polygraph also there, I believe."
 {¶ 46} Defense counsel objected to the reference to the polygraph and moved for a mistrial. The trial court overruled the motion.
 {¶ 47} We review a trial court's decision denying a motion for mistrial only for an abuse of discretion. State v. Stanley
(1997), 121 Ohio App.3d 673, 699, citing State v. Savage
(1987), 31 Ohio St.3d 173, 182.
 {¶ 48} Appellant has not shown he suffered prejudiced because of the sheriff's inadvertent reference to the public defender's office. See, generally, State v. Pump (June 20, 1994), 4th Dist. No. 93CA1968, 1994 Ohio App. LEXIS 2730, 7.
 {¶ 49} The record indicates appellant's counsel elicited the response regarding the polygraph. Thus, this constitutes invited error and a party may not take advantage of error he induced.State v. Seiber (1990), 56 Ohio St.3d 4, 17.
 {¶ 50} Appellant's second assignment of error is without merit.
 {¶ 51} In his third assignment of error, appellant argues the trial court erred when it excluded specific instances of conduct relating to Young's character. We disagree.
 {¶ 52} We must first determine whether appellant properly preserved this issue for review. The state filed a motion in limine seeking to preclude appellant from introducing character evidence of the victim. Before trial, the court ruled that Handwork could present character evidence in the form of reputation or opinion but could not present evidence of specific instances of the victim's conduct. Handwork then proffered the testimony of three witnesses, Jane Crites Kline, who would have testified regarding a robbery in which Young was involved in 1986, and in which Young bit someone; Mary Stovall, who would have testified that Young assaulted her in 2000; and James Martin who would have testified that in 2001, Young solicited him, that he agreed to a price, that he had sex with Young, that Young demanded more money, that Young took additional money, pointed a firearm at Martin and pulled the trigger.[3]
 {¶ 53} The state argues appellant failed to preserve this issue because his proffer was not made during trial. We disagree. In State v. Grubb (1986), 28 Ohio St.3d 199, the Ohio Supreme Court stated:
 {¶ 54} "An order granting or denying a motion in limine is a tentative, preliminary or presumptive ruling about an evidentiary issue that is anticipated. An appellate court need not review the propriety of such an order unless the claimed error is preserved by a timely objection when the issue is actually reached during the trial." Id. at 202, quoting State v. White (1982),6 Ohio App.3d 1.
 {¶ 55} In the instant case, although the proffer was made before the trial started, the issue was raised again at the appropriate time during trial; therefore, appellant has properly preserved this issue for review.
 {¶ 56} We review a trial court's decision to admit or exclude evidence only for an abuse of discretion. Slagel, supra at 601. "Abuse of discretion" means that the court's attitude is unreasonable, arbitrary or unconscionable. Adams, supra at 157-158, citing Steiner v. Custer (1940), 137 Ohio St. 448;Conner v. Conner (1959), 170 Ohio St. 85.
 {¶ 57} Evid.R. 404 provides in part:
 {¶ 58} "(A) Character evidence generally
 {¶ 59} "Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:
 {¶ 60} "(1) * * *
 {¶ 61} "(2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible; * * *.
 {¶ 62} "(B) Other crimes, wrongs or acts.
 {¶ 63} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 64} Thus, Evid.R. 404 provides that character evidence is admissible for some limited purposes. Evid.R. 405 then sets forth two methods by which character may be proved — opinion and reputation, and specific acts evidence — and when each type is admissible. Evid.R. 405 provides:
 {¶ 65} "(A) Reputation or opinion
 {¶ 66} "In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
 {¶ 67} "(B) Specific instances of conduct
 {¶ 68} "In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct."
 {¶ 69} Here, appellant contends the specific acts evidence was admissible for two purposes (1) to prove Young was the first aggressor under Evid.R. 405(B); and (2) to prove identity of the person who brought the knife to the scene and to establish Young's motive, plan, or scheme to relieve him of his money under Evid.R. 404(B).
 {¶ 70} In State v. Barnes, 94 Ohio St.3d 21, 2002-Ohio-68, the Ohio Supreme Court held, "A defendant asserting self-defense cannot introduce evidence of specific instances of a victim's conduct to prove that the victim was the initial aggressor." Id. at syllabus. In reaching this decision, the Court reasoned that:
 {¶ 71} "Although a victim's violent propensity may bepertinent to proving that he acted in a way such that a defendant's responsive conduct satisfied the elements of self-defense, no element requires proof of the victim's character or character traits. A defendant may successfully assert self-defense without resort to proving any aspect of a victim's character. Therefore, Evid.R. 405(B) precludes a defendant from introducing specific instances of the victim's conduct to prove that the victim was the initial aggressor." (Emphasis sic.) Id. at 24.
 {¶ 72} We believe this same reasoning applies in the instant case.
 {¶ 73} To establish the affirmative defense of voluntary manslaughter, appellant was required to prove he took Young's life "* * * while under the influence of sudden passion or in a sudden fit of rage, either of which [was] brought on by serious provocation occasioned by the victim that [was] reasonably sufficient to incite the person into using deadly force * * *." R.C. 2903.03(A). While the evidence appellant sought to introduce may be pertinent to the element of serious provocation, there are certainly other means of proving this element without resort to evidence of specific instances of the victim's conduct. Thus, as in Barnes, such evidence while pertinent, was not required.
 {¶ 74} Appellant next argues that evidence of specific instances of conduct was admissible under Evid.R. 404(B) to show Young brought the knife (identity) and her motive or plan to take his money by means of force. We disagree.
 {¶ 75} We first note the trial court allowed appellant to introduce evidence of Young's reputation for carrying a knife. Further, none of the other acts evidence appellant sought to introduce involved Young using a knife. Thus, such evidence could not be used to show identity.
 {¶ 76} With respect to Young's motive or plan, again, the trial court permitted appellant to introduce evidence of Young pursuing men for money and also Young's comments about wanting to take appellant's money. Neither Kline's nor Stovall's testimony was relevant as these crimes differed substantially from those at issue in this case. Arguably, Martin's testimony would tend to show Young's motive or plan in this case; however, as we discussed, the trial court did permit appellant to introduce reputation evidence on this issue and also evidence of Young's comments regarding taking appellant's money. Therefore, even assuming the trial court erred in refusing to admit such evidence, the error was harmless.
 {¶ 77} Appellant's third assignment of error is without merit.
 {¶ 78} In his final assignment of error, appellant contends the jury's verdicts convicting him of murder, rather than voluntary manslaughter, are against the manifest weight of the evidence. We disagree.
 {¶ 79} R.C. 2903.03(A) defines "voluntary manslaughter" and allows one charged with aggravated murder or murder to mitigate the charge to manslaughter if he establishes the mitigating circumstances of sudden passion or a sudden fit of rage in response to serious provocation by the victim sufficient to incite him to use deadly force. State v. Benge,75 Ohio St.3d 136, 140, 1996-Ohio-227, citing State v. Rhodes (1992),63 Ohio St.3d 613, 590, syllabus. "Voluntary manslaughter is considered an inferior degree offense to aggravated murder, which means that `its elements are identical to or contained within the indicted offense, except for one or more additional mitigating elements.'" Id., quoting Rhodes, at paragraph two of the syllabus. Thus, appellant had the burden of proving this affirmative defense by a preponderance of the evidence. R.C. 2901.05(A).
 {¶ 80} R.C. 2903.03 provides:
 {¶ 81} "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another * * *.
 {¶ 82} "(B) Whoever violates this section is guilty of voluntary manslaughter, a felony of the first degree."
 {¶ 83} We may find a verdict is against the manifest weight of the evidence even though legally sufficient evidence supports it. State v. Group, 98 Ohio St.3d 248, 2002-Ohio-7247, at ¶ 76. When we consider a manifest weight argument, we review the entire record, weigh the evidence and reasonable inferences, and consider the credibility of witnesses. Id. at ¶ 77. We then determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial. Id. We should only exercise this discretionary power in those exceptional cases where the evidence weighs heavily against conviction. Id.; see, also, State v. Thompkins
(1997), 78 Ohio St.3d 380, 387.
 {¶ 84} Here, appellant contends the evidence supports a finding that he was experiencing a sudden fit of rage at the time he killed Young, however, his own statement belies this argument. During his fifth statement, investigators asked appellant if he was angry at the time he killed Young. He responded that he was not angry, but scared. Therefore, we cannot say the jury's verdicts convicting appellant of murder rather than voluntary manslaughter were against the manifest weight of the evidence.
 {¶ 85} Appellant's fourth assignment of error is without merit.
 {¶ 86} For the foregoing reasons the judgment of the Portage County Court of Common Pleas is affirmed.
Ford, P.J., Grendell, J., concur.
[1] The body was found near the Portage-Stark County line. In fact, the hunter who found the body notified the Stark County Sheriff's office. Stark County deputies went to the scene and, upon determining the body was in Portage County, notified the Portage County Sheriff's office. Because Alliance was the closest city to where the body was found, the Portage County investigators went to the Alliance Police Department to seek identification.
[2]These photographs were state's exhibits 3, 5, 6, 10, 11, 13, 55, 59, 78, 79, 80, 81, 83, 85, 86, 88, 89, 94, and 99.
[3] The weapon misfired.