OPINION
{¶ 1} Appellant, Joleen McEndree, appeals her conviction on one count of possession of drugs, in violation of R.C.2925.11(A), a felony of the fifth degree. We affirm.
 {¶ 2} While on duty in the early hours of December 23, 2002, Patrolman Michael Palinkas of the Geneva Police Department was traveling northbound when he observed another northbound vehicle drifting approximately one foot left of the center line. Palinkas checked the registration of the vehicle and learned the vehicle belonged to one Ivan Tyler. According to Palinkas, Tyler had "multiple suspensions." The vehicle turned onto South Eagle Street in Geneva, then into a private driveway at which time Palinkas activated his overhead lights and initiated a traffic stop.
 {¶ 3} The driver of the vehicle, later identified as Todd Kuscik, exited the vehicle smoking a cigarette and approached Officer Palinkas. After exiting his cruiser, Palinkas advised Kuscik why he had been stopped and requested his driver's license. Kuscik identified himself but stated he had no driver's license and explained that Tyler, the vehicle's owner, was a friend of his. Palinkas ultimately determined that Kuscik's license was suspended and Kuscik was placed under arrest. The officer asked Kuscik to drop his cigarette at which time Kuscik was placed in the police cruiser.
 {¶ 4} Palinkas then approached the stopped vehicle to address the passenger. The officer observed an unopened can of beer in the vehicle's console. Appellant immediately admitted she had an open can of beer under her seat. The officer asked the passenger, later identified as appellant, where she and Kuscik had been; appellant stated they had returned "from the harbor." Palinkas testified that appellant had an "overwhelming odor of alcoholic beverage" about her person. He further stated appellant appeared "agitated" and "fidgety," characteristics of someone under the influence of narcotics.
 {¶ 5} Palinkas asked appellant to step out of the car; while exiting, appellant discarded a cigarette she had been smoking. Palinkas obtained the open container of beer and "dumped it out." The officer asked appellant if there was anything illegal in the vehicle. Appellant responded that there was nothing in the vehicle "she was aware of." According to Palinkas, appellant's demeanor subsequently changed, viz., she no longer made eye contact with him, and continued to fidget and move with greater frequency. The officer testified that he became suspicious that appellant was "covering up something and there was some crime taking place." Although neither under arrest nor in formal custody, Palinkas decided to Mirandize appellant. Appellant indicated she understood her rights and the patrolman reiterated his question as to whether there was "anything in the vehicle that [he] should know about." Appellant nodded and pointed to a pack of Camel cigarettes sitting in the vehicle's center console near the unopened can of beer. Palinkas retrieved the pack of cigarettes and observed a clear plastic baggie inserted into the cellophane wrapper. The baggie contained "a fine white powder substance" which, based upon his experience, Palinkas believed to be methamphetamine.
 {¶ 6} After Palinkas removed the baggie, appellant stated she was "just holding it" for Kascik. Appellant then admitted she was "an addict," and that she had used drugs that night. After conferring with Kuscik in his cruiser, Palinkas returned to the stopped vehicle and again asked appellant "where she was coming from." Appellant admitted she was returning from Madison where she smoked crack cocaine that evening. However, appellant underscored that the substance in the baggie was not hers and she was merely holding it for Kuscik.
 {¶ 7} Palinkas testified that the cigarette appellant had discarded upon exiting the vehicle was a "Camel brand cigarette." Palinkas testified that the cigarette Kuscik had discarded before being placed in the cruiser was a "Newport brand." The officer further stated that an open pack of Newport cigarettes was discovered on the driver's side dashboard of the stopped vehicle.
 {¶ 8} Appellant was arrested for possession of methamphetamines. On July 25, 2003, appellant was indicted for Possession of Drugs, in violation of R.C. 2925.11(A), a felony of the fifth degree. Appellant pleaded not guilty to this charge. On October 22, 2003, appellant filed a motion to suppress evidence and statements. The court conducted a hearing on appellant's motion and, on November 10, 2003, overruled them. On February 9, 2004, a jury trial was held after which appellant was found guilty as charged. On March 31, 2004, appellant was sentenced to a two year term of community control supervision and suspended driving privileges. Appellant now appeals and alleges four assignments of error.
 {¶ 9} "[1.] Appellant's conviction of Drug abuse in violation of Revised Code 2925.11 is neither supported by sufficient evidence nor is it supported by the manifest weight of the evidence."
 {¶ 10} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. An appellate court must view the evidence in the prosecution's favor and determine whether a rational jury could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
 {¶ 11} Here, appellant was charged with Drug Possession pursuant to R.C. 2925.11(A), which provides: "No person shall knowingly obtain, possess, or use a controlled substance." Id. Appellant argues that she never admitted ownership of the pack of cigarettes nor was she holding the pack at the time of her arrest. Hence, appellant submits, the state failed to prove she possessed the methamphetamines pursuant to the statute. We disagree.
 {¶ 12} With respect to drug offenses, "possession" is defined by R.C. 2925.01(K) which provides:
 {¶ 13} "`Possess' or `possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."
 {¶ 14} "Possession" of a drug may be either actual or constructive. State v. Lee, 11th Dist. No. 2002-T-0168,2004-Ohio-6954, at ¶ 41. If the evidence demonstrates that a party was able to exercise dominion and control over the drug(s) in question, a party can be convicted of constructive possession of the drug(s). State v. Wolery (1976), 46 Ohio St.2d 316, 329. To establish constructive possession "it must be also be shown that the [defendant] was conscious of the presence of the object." State v. Hankerson (1982), 70 Ohio St.2d 87, 92.
 {¶ 15} Here, the state offered evidence of appellant's admission that she was "holding" the methamphetamines for Kuscik. This admission makes it clear that appellant was conscious of the presence of the controlled substance. Through her admission, appellant admitted to knowing that the methamphetamine was in the cigarette pack. Moreover, her contention that she was holding
the drug implies that any control or dominion over the pack of cigarettes in which the substance was found belonged to appellant. Given its plain meaning, the term "holding" reasonably implies possession. Thus, although the substance was not within her immediate physical possession, appellant constructively possessed the methamphetamine by definition when she admitted she was "holding" the drug.
 {¶ 16} Moreover, the officer observed appellant smoking Camel cigarettes; the drug was found in the cellophane of a pack of Camel cigarettes. The officer observed that Kuscik was smoking Newport cigarettes and discovered an open pack of Newports on the driver's side dashboard. Appellant argues that such evidence is inconsequential because (1) no proof was offered to show that the Camel she was smoking came from that pack and (2) the pack of Camels was not submitted for fingerprinting. Under the circumstances, proof of this sort was unnecessary: The state submitted sufficient circumstantial evidence to permit a rational jury to find appellant guilty of possession of drugs under R.C.2925.11(A). Accordingly, we reject appellant's sufficiency challenge.
 {¶ 17} In reviewing a claim testing the evidential weight, an appellate court:
 {¶ 18} "weighs the evidence, and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Martin (1983), 20 Ohio App.3d 172, paragraph three of the syllabus.
 {¶ 19} However, the discretionary power to award a new trial should be used rarely and only when the evidence weighs heavily against a defendant's conviction. Id.
 {¶ 20} Appellant restates the same argument in support of her "weight" contention as that set forth for her "sufficiency" contention. Given the state of the evidence, including appellant's admissions and the officer's observations regarding the cigarette she was smoking, we do not think the jury clearly lost its way in convicting appellant of the charge of possession of drugs, viz., methamphetamine. Accordingly, appellant's first assignment of error is without merit.
 {¶ 21} "[2.] Appellant made a number of statements under the influence of alcohol and/or drugs that should have been suppressed."
 {¶ 22} When entertaining a motion to suppress, the trial court acts as the trier of fact. Hence, the trial court is in the best position to resolve factual issues and evaluate the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366. A reviewing court will therefore accept the trial court's findings of fact to the extent they are supported by competent, credible evidence. State v. Hrubik (June 30, 2000), 11th Dist. No. 99-A-0024, 2000 Ohio App. LEXIS 2999, at 5. After accepting the trial court's factual findings, the reviewing court will independently determine whether the trial court properly applied the law to the facts. State v. Foster, 11th Dist. No. 2003-L-039, 2004-Ohio-1438, at ¶ 6.
 {¶ 23} Under her second assignment of error, appellant asserts two issues for our review. First, appellant asserts Officer Palinkas lacked probable cause to arrest appellant. We disagree.
 {¶ 24} A police officer has probable cause to arrest when the facts and circumstances within his or her knowledge are sufficient to warrant a prudent individual to believe the suspect had committed or was committing an offense. Beck v. Ohio
(1964), 379 U.S. 89, 91. At the suppression hearing, Officer Palinkas testified he asked appellant if there was anything illegal in the stopped vehicle of which she was a passenger and appellant "nodded yes and pointed down towards a pack of cigarettes which was in the center console * * *." After discovering a white, powdery substance in the cigarette pack, appellant declared "it was not hers, that she was just holding it for Mr. Kuscik but she stated she was an addict, she did use drugs and had consumed some earlier" that night. In our view, appellant's admission was sufficient for Officer Palinkas to believe she had committed the offense of which she was charged, i.e., possession of drugs.
 {¶ 25} Appellant next contends that she was unable to knowingly, voluntarily, and intelligently waive her Miranda
rights and provide Palinkas with a voluntary statement due to the level of her intoxication. Again, we disagree.
 {¶ 26} Before addressing appellant's argument, it bears noting that appellant was not in custody at the time she made the incriminating statement regarding the location of and her connection to the methamphetamine. A party is entitled toMiranda warnings only where she is interrogated while in police custody, i.e., when a person is actually deprived of her freedom in some significant way. State v. Gaston (1996),110 Ohio App.3d 835, 841. The proper standard for determining whether a suspect is in custody for Miranda purposes is whether a reasonable person in the suspect's position would have believed she was the subject of custodial interrogation. Berkemer v.McCarty (1984), 468 U.S. 420, 442.
 {¶ 27} However, a suspect may be briefly detained by an officer without the detention rising to the level of a formal arrest. A law enforcement officer "who lacks probable cause but whose `observations lead him reasonably to suspect' that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to `investigate the circumstances that provoke suspicion.'" Id., citing United States v. Brignoni-Ponce (1975), 422 U.S. 873,881. The stop and inquiry must be "reasonably related in scope to the justification for their initiation." Terry v. Ohio (1968),392 U.S. 1, 29. Generally, this means that the officer may ask the suspect a "moderate number of questions" to determine her identity and to obtain information confirming or allaying the officer's suspicions. Berkemer, supra. The comparatively non-threatening character of an investigatory detention explains why Terry stops are not subject to the requirements ofMiranda. Id. at 440. Put simply, "[p]ersons temporarily detained pursuant" to Terry stops "are not `in custody' for the purposes of Miranda." Id.
 {¶ 28} The record indicates Palinkas made a valid stop of the vehicle in which appellant was a passenger. After the driver was placed under arrest for driving with a suspended license, Palinkas approached the stopped vehicle to address the passenger. Palinkas looked into the vehicle and noticed an unopened can of beer in the vehicle's console; appellant then volunteered she
had an open can of beer under her seat. According to Palinkas, appellant projected a strong odor of alcoholic beverage and appeared "agitated" and "fidgety." After appellant exited the vehicle, Palinkas asked her if there was anything illegal in the vehicle. Appellant stated she was aware of nothing; at this point, appellant ceased making eye contact with him and continued to fidget more aggressively. Palinkas then Mirandized
appellant, asked her if the vehicle contained anything "he should know about" and appellant pointed to the cigarette pack which housed the contraband at issue. Ultimately, appellant admitted that she was holding the contraband for the driver of the vehicle.
 {¶ 29} Based upon the circumstances we do not believe, as a matter of law, a reasonable person in appellant's position would have believed she was the subject of a custodial interrogation. The nature of the interaction in this case between the police officer and appellant was more akin to an investigatory Terry
stop than an arrest. Gaston, supra, at 842. See also, State v.Healy (Aug.4, 2000), 2d Dist. No. 18232, 2000 Ohio App. LEXIS 3480, at 16.
 {¶ 30} Palinkas initially approached the vehicle to speak with appellant regarding her and her driver's whereabouts that evening. Appellant subsequently admitted to having an open container of beer under her seat. Under the circumstances, we believe Palinkas had more than an adequate basis to believe appellant was committing a violation of R.C. 4301.62, Ohio's open container statute. This, in conjunction with appellant's general demeanor, illustrate a reasonable, articulable suspicion that appellant was engaged in criminal activity justifying a brief investigative stop authorized by Terry, supra. The brief, on-scene questioning of appellant by a single police officer was done as part of the normal fact-finding process and did not subject her to restraints comparable to those associated with formal arrest. As appellant was not "in-custody" at this time,Miranda was not triggered.
 {¶ 31} However, assuming arguendo that Palinkas's question regarding the contraband occurred during a custodial interrogation, appellant fails to specifically demonstrate that her waiver was neither knowingly nor voluntarily made. A suspect's decision to waive her Miranda rights is made voluntarily absent evidence that her will was overborne and her capacity for self-determination was critically impaired due to coercive police conduct. Colorado v. Spring (1987),479 U.S. 564, 574. Put differently, the inability to assert one's will in conjunction with coercive police conduct will render a waiver involuntary.
 {¶ 32} Appellant argues that she was unable to assert her waiver freely due to her intoxication. Intoxication, unto itself, is insufficient to render a statement per se inadmissible. SeeState v. Stanberry, 11th Dist. No. 2002-L-028, 2003-Ohio-5700, at ¶ 30. Rather, "* * * the presence of drugs or alcohol should be considered, [but] the amount must sufficiently impair the confessor's abilities to reason." State v. Stewart, 11th Dist. No. 2001-P-0035, 2002-Ohio-7270, at ¶ 49. While appellant's contention that she was intoxicated was corroborated by Officer Palinkas, she was able to respond to his questions and elaborate independently on why the methamphetamine was in the cigarette package. These facts do not demonstrate appellant's abilities to reason were so highly impaired as to render her statements inadmissible.
 {¶ 33} Further, there was no evidence that the officer coerced or otherwise pressured appellant into making her incriminating statement. Appellant was questioned as to the presence of contraband in the vehicle. Appellant freely indicated there was contraband in the vehicle, pointed at the console, and, without further question, asserted she was "holding" the contraband for appellant. Not only was there no evidence that appellant's will was overborne by the officer, the evidence indicates appellant volunteered the information without express solicitation from the officer. Appellant's second assignment of error is without merit.
 {¶ 34} "[3.] A cigarette pack and other evidence was found in violation of appellant's constitutional rights and should have been suppressed."
 {¶ 35} Appellant argues that she was subject to an invalid restraint on her liberty when she directed Officer Palinkas to the cigarette pack containing the incriminating evidence. Accordingly, appellant asserts the evidence upon which her conviction rests should have been suppressed.
 {¶ 36} As discussed in her second assignment of error, Palinkas' brief on-scene questioning of appellant was merely investigative in nature and did not subject her to restraints associated with a formal arrest: The officer asked appellant if she knew of anything illegal in the vehicle to which appellant responded with a nod. Without further questioning, appellant told the officer where the contraband was (in the console) and the reason why it was there (she was "holding" it for Kuscik). Appellant's statement did not occur under a restraint of her freedom and was independently offered without coercion.
 {¶ 37} Appellant was ultimately arrested; however, the arrest occurred subsequent to appellant's unprompted admission that she was "holding" the methamphetamine for Kuscik. The post-arrest statement was valid as the officer had probable cause to believe the crime of possession of drugs had been committed. The facts simply do not support appellant's claim. Appellant's third assignment of error is without merit.
 {¶ 38} "[4.] Appellant's rights to a fair trial were violated by a number of remarks that were made by Assistant Ashtabula Prosecutor Teri Burnside during closing argument."
 {¶ 39} Appellant contends her conviction was a result of prosecutorial misconduct; specifically, appellant complains, during closing argument, the prosecutor incited the passions of the jurors when she made the following statement: "* * * as you know, meth is very prevalent in this County." Appellant argues this statement was designed to incite the jury to convict appellant on irrelevant and prejudicial evidence.
 {¶ 40} When analyzing a claim of prosecutorial misconduct, we must decide whether the prosecutor's remarks were improper, and if so, whether the improper remarks adversely affected a substantial right of the accused. State v. Handwork, 11th Dist. No. 2002-P-0134, 2004-Ohio-6181, at ¶ 36. An appellate court must review the entire closing argument to determine whether the prosecutor's remarks were prejudicial to the accused. State v.Tumbleson (1995), 105 Ohio App.3d 693, 700. The state has great latitude when making its closing argument. Id. Accordingly, a reversal premised upon a prosecutor's statements is justified only where it "permeates the entire atmosphere of the trial."United States v. Warner (1992, C.A. 6), 955 F.2d 441, 456.
 {¶ 41} While the prosecutor's remark regarding the prevalence of methamphetamine was inappropriate, we do not believe appellant's right to a fair trial was prejudiced. Immediately after the remark, the trial court gave the jury a curative instruction indicating the prosecutor's remark was not evidence. The court further entreated the jury "to decide this case only upon the evidence that is presented in the courtroom." Absent reason to the contrary, an appellate court will presume a jury follows the instructions offer it by the court. State v. Loza
(1994), 71 Ohio St.3d 61, 75.
 {¶ 42} Furthermore, the prosecutor's comments were an "isolated incident in an otherwise properly tried case." Statev. Keenan (1993), 66 Ohio St.3d 402, 410. With these observations in mind, we find it implausible that the jury determined its verdict based upon the isolated remark in question. See, Tumbleson, supra. Therefore, appellant's fourth assignment of error lacks merit.
 {¶ 43} For the foregoing reasons, appellant's assigned errors are without merit and the judgment of the Ashtabula Court of Common Pleas is hereby affirmed.
O'Toole, J., concurs in judgment only, O'Neill, J., concurs in judgment only with Concurring Opinion.