OPINION
{¶ 1} Appellant, Steven G. Djisheff, appeals from the December 28, 2004 judgment entry of the Newton Falls Municipal Court, in which he was sentenced for driving a motor vehicle under the influence of alcohol ("DUI"), reckless operation, and a seatbelt violation.
 {¶ 2} In the early morning hours of March 17, 2004, appellant was driving his vehicle eastbound on State Route 5 in Trumbull County. John Marino was a passenger in appellant's vehicle. Trooper Willie Smith ("Trooper Smith") of the Ohio State Highway Patrol was in his patrol car traveling in the opposite direction. He estimated that appellant's vehicle was traveling in excess of eighty m.p.h. Trooper Smith performed a U-turn and caught up to appellant's automobile several miles later, at speeds in excess of one hundred m.p.h. By that time, appellant's car was stopped on the side of the highway.
 {¶ 3} Trooper Smith activated his overhead lights, exited his vehicle, and approached appellant's automobile. He told appellant that the reason for the stop was the excessive speed. At that time, Trooper Smith noticed an odor of an alcoholic beverage, specifically beer, emanating from appellant's vehicle. Appellant admitted that he consumed two and one-half beers at a bar.
 {¶ 4} Trooper Smith asked appellant to step out of his vehicle. He told appellant to sit in the front passenger seat of the patrol car. Appellant was not handcuffed at that time. Trooper Smith conducted the Horizontal Gaze Nystagmus ("HGN") field sobriety test on appellant. Trooper Smith indicated that he observed several clues indicating appellant was intoxicated during the HGN test. As a result, appellant was arrested and transported to the State Highway Patrol barracks. Trooper Smith did not conduct any other field sobriety tests at the scene of the stop.
 {¶ 5} At the barracks, appellant declined to perform any additional field sobriety tests. In addition, he refused to submit to a breathalyzer test.
 {¶ 6} Appellee, the state of Ohio, charged appellant with driving under the influence of alcohol in violation of R.C.4511.19(A)(1); reckless operation — speed in excess of one hundred m.p.h. in violation of R.C. 4511.20; and an R.C.4513.263(B)(1) seatbelt violation. Appellant pleaded not guilty to the charges against him.
 {¶ 7} On August 31, 2004, appellant filed a motion to suppress the evidence from the stop. Specifically, he sought to suppress the following: the results of any blood or breath alcohol tests; any statements he made; any observations from the arresting officer regarding his intoxication level; the results of any field sobriety tests; any and all evidence obtained as a result of the arrest; and his refusal to submit to further alcohol analysis.
 {¶ 8} A suppression hearing commenced on September 7, 2004. The transcript of the suppression hearing is very poor. There are many instances that are deemed "inaudible." Specifically, there are numerous times in which the entire answer of a witness is inaudible.
 {¶ 9} Following the hearing, the trial court denied appellant's motion to suppress. Thereafter, appellant withdrew his not guilty plea and pleaded no contest to the charges. Pursuant to its December 28, 2004 judgment entry, the trial court found appellant guilty of the offenses and sentenced him to one hundred eighty days in jail, one hundred sixty days suspended, and order him to pay a fine in the amount of $1,500, $1,100 suspended.
 {¶ 10} As a result of the poor suppression hearing transcript, appellant filed a narrative statement of evidence pursuant to App.R. 9(C). This narrative statement was agreed to by both parties, and approved by the trial court. Upon receiving the App.R. 9(C) statement, it became apparent to this court that a transcript had been prepared. Therefore, this court permitted appellant to supplement the record with a transcript of the proceedings.
 {¶ 11} It is from the December 28, 2004 judgment that appellant filed a timely notice of appeal and makes the following assignments of error:[1]
 {¶ 12} "[1.] The trial court erred by failing to suppress the result of the HGN and finding that the testing was done in accordance with the standards set forth in the [NHTSA] manual Ohio Department of Health.
 {¶ 13} "[2.] The trial court erred in finding that the trooper ha[d] probable cause to arrest [appellant] and charge him with DUI, in violation of [R.C.] 4511.19, when the trooper failed to comply with the requirements of the National Highway [Traffic] Safety Administration in the administering of the field sobriety test.
 {¶ 14} "[3.] The trial court erred by failing to preserve evidence.
 {¶ 15} "[4.] [The] trial court erred [by] ruling that no Miranda warnings were required before admitting appellant's statements into evidence.
 {¶ 16} "[5.] [The] trial court erred by finding that no further testing was necessary at the scene of the stop."
 {¶ 17} In his first assignment of error, appellant argues that the trial court erred by failing to suppress the result of the HGN test. He asserts that the testing was not done in accordance with the standards set forth in the NHTSA manual.
 {¶ 18} This court stated in State v. Jones, 11th Dist. No. 2001-A-0041, 2002-Ohio-6569, at ¶ 16:
 {¶ 19} "[a]t a hearing on a motion to suppress, the trial court assumes the role of the trier of facts and, therefore, is in the best position to resolve questions of fact and evaluate the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366 * * *. When reviewing a motion to suppress, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.State v. Guysinger (1993), 86 Ohio App.3d 592, 594 * * *. Accepting these findings of facts as true, a reviewing court must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the appropriate legal standard. State v. Curry (1994), 95 Ohio App.3d 93, 96
* * *." (Parallel citations omitted.)
 {¶ 20} In State v. Homan (2000), 89 Ohio St.3d 421, the Supreme Court of Ohio held that field sobriety tests must be conducted in strict compliance with the NHTSA standards. TheHoman holding was subsequently superseded by statute. Following the Homan decision, the General Assembly amended R.C. 4511.19. Amended R.C. 4511.19, effective April 9, 2003, no longer requires an arresting officer to administer field sobriety tests in strict compliance with testing standards for the test results to be admissible. Rather, substantial compliance is required. State v.Delarosa, 11th Dist. No. 2003-P-0129, 2005-Ohio-3399, at ¶ 45, fn. 4; State v. Boczar, 11th Dist. No. 2004-A-0063,2005-Ohio-6910, at ¶ 31-36.[2]
 {¶ 21} The state has the burden to demonstrate that the field sobriety tests were conducted in substantial compliance with the NHTSA standards. See State v. Brown, 11th Dist. No. 2004-T-0123, 2006-Ohio-1172, at ¶ 25. See, also, State v.Gasser (1980), 5 Ohio App.3d 217, 219. Part of this burden includes demonstrating what the NHTSA requirements are, through competent testimony and/or introducing the applicable portions of the NHTSA manual. Brown, supra, at ¶ 19-25, citing State v.Nickelson (July 20, 2001), 6th Dist. No. H-00-036, 2001 Ohio App. LEXIS 3261, at 10 and State v. Ryan, 5th Dist. No. 02-CA-00095, 2003-Ohio-2803, at ¶ 20-21. See, also, State v.Duncan, 11th Dist. No. 2004-L-065, 2005-Ohio-7061, at ¶ 18-20.
 {¶ 22} In this matter, no portions of the NHTSA manual were introduced at the suppression hearing. Further, the transcript of Trooper Smith's testimony regarding the HGN test was very poor. Many of his responses are inaudible. The record before this court is inconclusive as to whether appellee met its burden regarding the NHTSA standards.
 {¶ 23} In his memorandum of fact and law filed subsequent to the suppression hearing, appellant attached copies of certain sections of the NHTSA manual. Since these portions of the manual are part of the record, we will base our subsequent analysis on these portions.
 {¶ 24} This court has addressed whether an HGN test conducted in the front seat of a police car complies with the NHTSA guidelines. This court held "in the absence of a specific requirement in the NHTSA manual, the admissibility of the results of the HGN test are dependent on how the officer is trained to administer them and whether the officer's actions complied with his training." State v. Dohner, 11th Dist. No. 2003-P-0059,2004-Ohio-7242, at ¶ 13. The NHTSA testing manual clearly requires the three common field sobriety tests, walk-and-turn, one-leg-stand, and HGN, to be given outside the vehicle. Trooper Smith conducted the test inside his patrol car. Further, he did not testify that he was trained to conduct the test inside a vehicle.
 {¶ 25} The NHTSA manual provides that the officer clearly instruct the subject. The manual also requires the officer to instruct the suspect to remove any glasses or contact lenses. Trooper Smith was asked if he recalled giving any instructions to appellant regarding the HGN test. His response was inaudible. However, in the narrative statement, the parties agreed that Trooper Smith did not recall instructing appellant regarding contact lenses or glasses.
 {¶ 26} The NHTSA guidelines indicate that the HGN test be done twice. Trooper Smith testified that he conducted the test only once, by making a single pass with the object for each eye. The test lasted for a four-count on each eye.
 {¶ 27} Again, the HGN test was conducted inside a patrol car, there was only one pass conducted, and there is no evidence that any instructions were given to appellant. Taken together, the HGN test was not conducted in substantial compliance with the NHTSA testing guidelines. However, because Trooper Smith had probable cause to arrest appellant for violating R.C. 4511.19, which will be addressed in more detail in appellant's second assignment of error, the trial court's failure to suppress the result of the HGN test was harmless error. "Harmless error is any error that does not affect the outcome of the case and, thus, does not warrant a judgment overturned or set aside." State v. Haynes,
11th Dist. No. 2003-A-0055, 2004-Ohio-3514, at ¶ 16, citingState v. Brown, 100 Ohio St.3d 51, 2003-Ohio-5059, at ¶ 25; Crim.R. 52(A). Even excluding the field sobriety test, the facts of this case, in their totality, establish that probable cause existed for the DUI arrest.
 {¶ 28} Appellant's first assignment of error is without merit.
 {¶ 29} In his second assignment of error, appellant argues that the trial court erred in finding that Trooper Smith had probable cause to arrest him and charge him with DUI, in violation of R.C. 4511.19. Appellant stresses that Trooper Smith failed to comply with the requirements of the NHTSA in the administering of the field sobriety test.
 {¶ 30} "Whether there is probable cause to arrest depends upon whether an officer has sufficient information to cause a prudent person to believe the suspect was driving under the influence." Schmitt, supra, at ¶ 8, citing Homan, supra, at 427.
 {¶ 31} This court has held that a refusal to take field sobriety tests may be taken into account when determining whether an officer had probable cause to effectuate an arrest. State v.Molk, 11th Dist. No. 2001-L-146, 2002-Ohio-6926, at ¶ 19. While appellant refused to take the additional field sobriety tests at the barracks, he had already been arrested at that point, so his refusal is irrelevant in determining whether Trooper Smith had probable cause to arrest him.
 {¶ 32} In support of its conclusion that Trooper Smith had probable cause to arrest appellant for DUI, the trial court made the following finding: "[t]he defendant's high rate of speed, odor of alcohol, questionable speech, and the appearance of being unsteady on his feet in the patrol car video, all combined to constitute probable cause."
 {¶ 33} The trial court found that appellant's speech was questionable. Trooper Smith testified that he could not identify appellant's speech as normal, nor could he identify it as being slurred. Therefore, he put a question mark on his report for his description of appellant's speech. Since Trooper Smith could not identify any specific characteristics concerning appellant's speech, the trial court should not have considered this as a factor in its probable cause determination.
 {¶ 34} The trial court concluded that the videotape showed appellant being unsteady on his feet. However, as addressed more fully in appellant's third assignment of error, we will not consider the videotape for any purpose, since the parties and trial court agreed that it was unviewable.
 {¶ 35} Trooper Smith testified that he estimated appellant was traveling over eighty m.p.h. It took Trooper Smith several miles to catch up with appellant, even at speeds in excess of one hundred m.p.h. Excessive speed is a factor that can support a finding of probable cause to arrest a suspect for DUI. State v.Lopez, 1st Dist. Nos. C-020516 and C-020517, 2003-Ohio-2072, at ¶ 13. See, also, Mentor v. Henry (Sept. 4, 1992), 11th Dist. No. 91-L-163, 1992 Ohio App. LEXIS 4538, at 4. In this case, appellant's speed was more than a mere driving infraction, it was reckless.
 {¶ 36} Appellant admitted that he consumed two and one-half beers. An admission by a driver that he has consumed alcoholic beverages is a factor to be considered in a probable cause determination for a DUI arrest. State v. Droste (1998),83 Ohio St.3d 36, 40; see, also, State v. Hynde, 11th Dist. No. 2004-P-0030, 2005-Ohio-1416, at ¶ 11.
 {¶ 37} Trooper Smith testified that he smelled the odor of an alcoholic beverage. An officer's detection of an odor of an alcoholic beverage is a relevant factor to determine if the officer has probable cause to arrest a suspect for DUI. State v.Hancock, 11th Dist. No. 2004-A-0046, 2005-Ohio-4478, at ¶ 17, citing State v. Rendina (Dec. 23, 1999), 11th Dist. No. 98-L-129, 1999 Ohio App. LEXIS 6269, at 16-17.
 {¶ 38} Much of the evidence that the trial court considered should not have been. We are left with the high rate of speed, the odor of an alcoholic beverage, and appellant's admission that he had been drinking. These factors, standing alone, are sufficient to warrant a prudent person to believe appellant was driving his vehicle under the influence of alcohol. Thus, based upon the totality of the circumstances, Trooper Smith had probable cause to arrest appellant for a violation of R.C.4511.19.
 {¶ 39} Appellant's second assignment of error is without merit.
 {¶ 40} In his third assignment of error, appellant contends that the trial court erred by failing to preserve evidence. In appellant's brief, his counsel argues that, following the suppression hearing, he requested the videotape of appellant's stop from the trial court and was informed that it could not be located. He also asserts that he was unable to obtain another copy of the tape from the Ohio State Highway Patrol. Neither of these assertions is supported by the record before us.
 {¶ 41} In the narrative statement of evidence, the parties agreed, and trial court approved, the following conclusion that "the videotape of appellant's stop is, for the most part, unviewable." Accordingly, we will not consider the tape for any purpose.
 {¶ 42} Appellant's third assignment of error is without merit.
 {¶ 43} In his fourth assignment of error, appellant alleges that the trial court erred by ruling that no Miranda warnings were required before admitting his statements into evidence. Appellant argues that he should have received Miranda warnings before being questioned by Trooper Smith. Miranda v. Arizona
(1966), 384 U.S. 436.
 {¶ 44} "Pursuant to Miranda, statements `stemming from custodial interrogation of the defendant' must be suppressed unless the defendant had been informed of his Fifth and Sixth Amendment rights before being questioned. `Custodial interrogation' means `questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' [Miranda, supra, at 444.]." State v. Williams,99 Ohio St.3d 493, 2003-Ohio-4396, at ¶ 88.
 {¶ 45} The First Appellate District has held that an individual is not "in custody" when questioned by a police officer during a routine traffic stop. State v. Stafford,158 Ohio App.3d 509, 2004-Ohio-3893, at ¶ 41, citing Berkemer v.McCarty (1984), 468 U.S. 420. This court has similarly followed the Berkermer holding, "[p]ut simply, `persons temporarily detained pursuant' to [Terry v. Ohio (1968), 392 U.S. 1] stops `are not in custody for the purposes of Miranda.'" State v.McEndree, 11th Dist. No. 2004-A-0025, 2005-Ohio-6909, at ¶ 27, quoting Berkemer at 440.
 {¶ 46} Appellant was seated in the front seat of his own vehicle when he made the statement that he had consumed two and one-half beers. This statement was made in response to the initial investigation during a routine traffic stop. Appellant was not under arrest at that time. Therefore, he was not "in custody" when he made the statement. As such, no Miranda
warnings were required.
 {¶ 47} Appellant's fourth assignment of error is without merit.
 {¶ 48} In his fifth assignment of error, appellant alleges that the trial court erred by finding that no further testing was necessary at the scene of the stop.
 {¶ 49} The trial court correctly concluded that the additional field sobriety tests were not required. Field sobriety tests are designed to assist an officer in determining whether there is probable cause to arrest a suspect for DUI. However, if there are other factors that support the officer's conclusion that probable cause exists, the tests are not necessary. R.C.4511.19(D)(4)(c). In the foregoing analysis, we concluded that there were sufficient factors to establish probable cause for Trooper Smith to arrest appellant for DUI.
 {¶ 50} Appellant's fifth assignment of error is without merit.
 {¶ 51} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Newton Falls Municipal Court is affirmed.
Diane V. Grendell, J., concurs, William M. O'Neill, J., dissents with Dissenting Opinion.
[1] Appellee did not file an appellate brief.
[2] On January 21, 2004, the Supreme Court of Ohio in State v.Schmitt, 101 Ohio St.3d 79, 2004-Ohio-37, applied the strict compliance standard. However, we note that Schmitt dealt with an arrest which took place prior to the passage of S.B. 163, and the court acknowledged its application was limited in light of S.B. 163. Id. at ¶ 9, fn. 1. In the case sub judice, the incident occurred on March 17, 2004, almost one year after R.C. 4511.19
was amended.