[Cite as *State v. Cook*, 2013-Ohio-2832.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NOS. 2012-P-0098 and 2012-P-0099** |
| KELLY E. COOK, | : | |
| Defendant-Appellant. | : | |

Criminal Appeals from the Portage County Municipal Court, Kent Division, Case Nos. K11 TRC 3865 and 11 CRB 2716.

Judgment: Affirmed.

*Victor V. Vigluicci*, Portage County Prosecutor and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Jamison A. Offineer*, Student Legal Services, Inc., Kent State University, 164 East Main Street, #203, Kent, OH 44240 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1}   Kelly E. Cook appeals from the judgment of the Portage County Municipal Court, Kent Division, denying her motion to suppress. Ms. Cook was stopped by Officer Jason M. Short of the City of Kent Police in the early hours of December 27, 2011, as he responded to a dispatch regarding a fight between two women at an apartment. Officer Short eventually arrested Ms. Cook for operating a vehicle under the influence of

alcohol. Fundamentally, Ms. Cook contends Officer Short had no reasonable suspicion to stop her vehicle. We respectfully disagree, and affirm the judgment of the trial court.

{¶2} The facts are taken from the transcript of the suppression hearing, and the recording of 9-1-1 calls which were introduced at the hearing.

{¶3} Just before 2:00 a.m., December 27, 2011, Dispatcher Lafferty of the Kent police received a 9-1-1 call from Patricia Kincade, a resident at an apartment complex located at 890 Simon Lane in Kent. The call proceeded as follows.

{¶4} Dispatcher: "Kent Police Department, Lafferty.

{¶5} Kincade: "Hi. Um, there is somebody in my apartment building pounding on somebody else's door and they won't stop. Like, they've been doing it for seriously like seven minutes.

{¶6} Dispatcher: "Okay, do you know the address?

{¶7} Kincade: "Um, no. I – I haven't even looked.

{¶8} Dispatcher: "What building are you in?

{¶9} Kincade: "Um. 890 Simon Lane

{¶10} Dispatcher: "Okay, is it on your floor?

{¶11} Kincade: "Yes. Well it sounds like it because it's so loud. And I'm uh, you know, kids are sleeping, other people are sleeping.

{¶12} Dispatcher: "Okay. What is your name?

{¶13} Kincade: "Patricia Kincade.

{¶14} Dispatcher: "And what's your phone number Patricia?

{¶15} Kincade: "Um, 330-906-6721.

{¶16} Dispatcher: "What apartment number are you in?

{¶17} Kincade: "101.

{¶18} Dispatcher: "Okay, you didn't see where they are – who it was?"

{¶19} Kincade: "I mean I- I know they're on my floor. I hear it. They're still, it's still going on. I can even hear a female yelling.

{¶20} Dispatcher: "Okay. If the per * * * the female that's yelling, is she the one that outside of the door pounding or do you think * * *?

{¶21} Kincade: "I believe she's on the inside but I'm * * * I'm not sure. I don't * * * I don't even want to look. 'Cuz * * * our * * * doors are so * * * you know?

{¶22} Dispatcher: "That's fine. I'll go ahead and send somebody out. If anything changes before we get out there can you give us a call back?

{¶23} Kincade: "Yes, I will. Thank you.

{¶24} Dispatcher: "Thank you.

{¶25} Kincade: "Bye.

{¶26} Dispatcher: 'Bye".

{¶27} Dispatcher Lafferty radioed that someone on the first floor at 890 Simon was pounding on the door of an apartment, and that a woman inside that apartment was yelling.

{¶28} A moment later, Ms. Kincade placed another 9-1-1 call.

{¶29} Dispatcher: "Kent Police Department, Lafferty.

{¶30} Kincade: "Hello, I just called. Um, they really need to get here now. There's two females that are like fighting.

{¶31} Dispatcher: "Okay. Are they fighting each * * * or * * * are they on still on opposite sides of the door or are they * * * [inaudible].

3

{¶32} Kincade: "Um well * * *.

{¶33} Dispatcher: "* * * or are they physically fighting?

{¶34} Kincade: "Hold on, hold on a second.  Somebody is leaving.

{¶35} Dispatcher: "[inaudible] 228.

{¶36} Kincade: "All I heard was somebody was being thrown out of a * * * thrown out of car at twenty miles per hour and the door slamming.

{¶37} Dispatcher: "[To someone else] [inaudible] to advise she believes that two females are fighting.

{¶38} Kincade: "Hold on, I'm sorry.

{¶39} Dispatcher: "[inaudible] thrown out of a vehicle.  Still trying to get further.

{¶40} Kincade: "Yes the * * * the female is leaving.

{¶41} Dispatcher: "Okay. Can you des * * * can you see her?

{¶42} Kincade: "Uh * * * I don't have my glasses.

{¶43} Dispatcher: "That's okay.  If you can tell me anything that she * * * what she looks like, that'll help my officers out, but if not then * * *.

{¶44} Kincade: "She [inaudible] * * * the car * * * [inaudible] * * * I can tell you what the car looks like in about two seconds if that'll help?

{¶45} Dispatcher: "Okay.

{¶46} Kincade: "Okay.  She * * * her license plate is * * * oh god she's backing up. [Inaudible].

{¶47} Dispatcher: "[To someone else] One of the females involved is getting into a vehicle.

4

{¶48} Kincade: "It's 4 * * * 9 * * * 2 * * * something * * * [inaudible] * * * I believe it's an 'm.' It's a silver kind a car. But it's like a Jeep but smaller. She just pulled out.

{¶49} Dispatcher: "228. She just got into a silver vehicle, smaller than a Jeep.

{¶50} Kincade: "But it's got the hump on the top of the car. You know what I mean?

{¶51} Dispatcher: "[Cross-talk] Okay my officer is [inaudible]. And the other female that was involved is still in the apartment?

{¶52} Kincade: "Yes. Um, it sounded like it was upstairs. But, um, I can't * * * I can't even tell you 'cuz I looked out my peephole and I couldn't see. [Cross-talk] 'Cuz she walked either up or down the stairs, but it was real [inaudible].

{¶53} Dispatcher: "Okay. Alright, um, my officer found the vehicle that you just described to me so I'll go ahead and let you go, okay?

{¶54} Kincade: Alright.

{¶55} Dispatcher: "Alright, Thank you.

{¶56} Kincade: "Thank you so much.

{¶57} Dispatcher: "You're welcome.

{¶58} Kincade: "Bye.

{¶59} Dispatcher: "Bye."

{¶60} Officer Short was just arriving at 890 Simon Lane. He spotted a tan or silver Subaru, driven by a woman, exiting the apartment complex parking lot. It had a license number of 492 XJT. Officer Short activated his overhead lights, and made an investigative stop of the Subaru. In the short distance that car had driven since leaving the apartment complex, Officer Short observed no traffic violations.

{¶61} The driver of the vehicle – Ms. Cook – opened her door when Officer Short approached. He asked her if she knew anything about a fight at the apartment complex. Officer Short testified that Ms. Cook did not really respond to this question. He further testified that Ms. Cook seemed very drunk, and admitted to drinking; that her car had been stolen in Stow, Ohio; and, that she yelled at him to get her out of the area. He had her perform field sobriety tests, which she failed.

{¶62} Meanwhile, other responding officers entered the apartment complex, and spoke with Ms. Kincade. With her help, they identified the other woman involved in the recent fight, and ascertained that she was uninjured.

{¶63} Ms. Cook was arrested, and taken to the police station, where she refused a breathalyzer test. She was charged with OVI, pursuant to R.C. 4511.19(A)(1)(a), refusing a chemical test, pursuant to R.C. 4511.19(A)(2), and an open container violation pursuant to R.C. 4301.62. Ms. Cook was released on bond; and, December 30, 2011, entered a plea of not guilty to the charges. February 21, 2012, she filed her motion to suppress. Hearing on the motion went forward June 14, 2012. That same day, the trial court denied the motion.[1] June 30, 2012, Ms. Cook changed her plea to one of no contest, and the trial court stayed its judgment pending appeal. August 22,

---

1. The judgment entry of the trial court denied the motion to suppress in a single sentence. It did have a lengthy exchange with defense counsel regarding the case at the end of hearing. In evaluating a suppression motion as the trier of fact, the trial court must follow Crim.R. 12(F), which states: "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." "The underlying rationale of Crim.R. 12(F) is to allow for effective judicial review." *Kirtland Hills v. Medancic*, 11th Dist. Nos. 2011-L-136 and 2011-L-137, 2012-Ohio-4333, ¶8, citing *State v. Marinacci*, 5th Dist. No. 99-CA-37, 1999 Ohio App. LEXIS 5279, *4 (Nov. 3, 1999). "Indeed, only with a recitation of the trial court's factual findings is a reviewing court able to properly determine whether the findings are supported by the record and whether the correct law was applied to those facts. Conversely, '(i)f the trial court does not make findings of fact, appellate review of the decision is hampered.'" *Medancic* at ¶8, quoting *State v. Bailey*, 5th Dist. No. CT2002-0041, 2003 Ohio App. LEXIS 5690, *6 (Nov. 21, 2003). While it is not reversible error for a trial court to fail to place these findings in writing, so long as they are apparent from the transcript of proceedings, written findings facilitate appellate review, since they inform the reviewing court of the exact basis of the trial court's judgment.

6

2012, following a status conference, the trial court entered a nunc pro tunc judgment entry, noting that it had failed to rule on the open container violation; denying the motion to suppress regarding that charge, and setting the case for trial.

{¶64} August 23, 2012, Ms. Cook noticed this appeal.

{¶65} "'Appellate review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154, 2003-Ohio-5372, * * *. During a hearing on a motion to suppress evidence, the trial judge acts as the trier of fact and, as such, is in the best position to resolve factual questions and assess the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, * * *. An appellate court reviewing a motion to suppress is bound to accept the trial court's findings of fact where they are supported by competent, credible evidence. *State v. Guysinger* (1993), 86 Ohio App.3d 592, 594, * * *. Accepting these facts as true, the appellate court independently reviews the trial court's legal determinations de novo. *State v. Djisheff,* 11th Dist. No. 2005-T-0001, 2006-Ohio-6201, at ¶19.' *Geneva v. Fende*, 11th Dist. No. 2009-A-0023, 2009-Ohio-6380, at ¶11." (Parallel citations omitted.) *State v. Larrick*, 11th Dist. No. 2009-P-0054, 2010-Ohio-2288, ¶10.

{¶66} Ms. Cook assigns two errors. The first reads:

{¶67} "The trial court committed reversible error in overruling Appellant/Defendant Kelly E. Cook's, Motion to Suppress since the dispatch relied upon by the officer to stop Ms. Cooks' vehicle was not precipitated by facts amounting to reasonable suspicion of criminal activity, and since the description of the suspect and

7

the suspect's vehicle was not sufficient to give the officer reasonable suspicion to stop Ms. Cook's vehicle."

{¶68} Under this assignment of error, Ms. Cook presents two issues. We consolidate them for review. The first is:

{¶69} "Was a citizen caller's tip that someone was pounding on her neighbor's door followed by a call that two unidentified females were 'like fighting' somewhere in her apartment sufficient to create a reasonable suspicion that Ms. Cook had been engaged in criminal activity even though caller had only heard a verbal fight between the two females and even though the caller did not provide dispatch with any details specific to Ms. Cook's alleged involvement with the incident?"

{¶70} The second issue presented is:

{¶71} "Was the description of the suspect, a female, and the suspect's vehicle, a silver, Jeep styled car with the license plate number 492-7-JTM, sufficient to give Officer Short reasonable suspicion to stop a (sic) Ms. Cook's vehicle, which was described as a tan or silver Subaru, that did not resemble a Jeep, and had a license number of 492 XJT?"

{¶72} By her first assignment of error, therefore, Ms. Cook alleges that the 9-1-1 calls by Ms. Kincade were insufficient (1) to establish that any crime had occurred; (2), to establish that Ms. Cook was one of the females involved in the altercation reported by Ms. Kincade; and (3) that the vehicle she reported did not sufficiently describe Ms. Cook's vehicle.

{¶73} We respectfully disagree on all points.

8

{¶74} "In *Terry v. Ohio (*1968), 392 U.S. 1, * * *, the United States Supreme Court held that a police officer may make a brief, warrantless, investigatory stop of an individual without probable cause to arrest where the officer reasonably suspects that the individual is or has been involved in criminal activity. In reaching that conclusion, the officer must be able to point to specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant the intrusion. *State v. Andrews* (1991), 57 Ohio St.3d 86, * * *, quoting *Terry*, 392 U.S. at 21.

{¶75} "Whether an investigatory stop is reasonable depends upon the totality of circumstances surrounding the incident. *State v. Williams* (1990), 51 Ohio St.3d 58, 60, * * *. The propriety of an investigatory stop must be assessed in light of the totality of the circumstances as viewed through the eyes of a reasonable police officer who must confront those circumstances on the scene. *State v. Andrews*, 57 Ohio St.3d at 87-88.

{¶76} "Reasonable suspicion, however, need not be based only on an officer's personal observations. *Adams v. Williams* (1972), 407 U.S. 143, 147, * * *. The officer may rely on information gleaned from other valid sources, such as other officers or a police radio dispatch. *United States v. Hensley* (1985), 469 U.S. 221, * * *. This principle is rooted in the notion that 'effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information.' Id. at 231, * * *, quoting *United States v. Robinson* (C.A.9, 1976), 536 F.2d 1298, 1299. When a dispatch is involved, therefore, the officer who conducts the initial stop will

9

typically have very little knowledge of the facts that prompted his or her fellow officer to issue the dispatch.

{¶77} "The United States Supreme Court has reasoned, then, that the admissibility of the evidence uncovered during such a stop does not rest upon whether the officers relying upon a dispatch 'were themselves aware of the specific facts which led their colleagues to seek their assistance.' It turns instead upon whether the officer who issued the dispatch possessed reasonable suspicion to make the stop. Id. at 231. Thus, if a dispatch was issued in the absence of reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment. *Hensley*, 469 U.S. at 232.

{¶78} "Relying on *Hensley*, the Ohio Supreme Court held that it is the state's responsibility at a suppression hearing to demonstrate that the facts precipitating a dispatch indicated a reasonable suspicion of criminal activity. *Maumee v. Weisner* (1999), 87 Ohio St.3d 295, 298, * * *. Where law enforcement officers rely solely upon an informant's tip before effectuating a stop, the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip. *Weisner,* 87 Ohio St.3d at 298-299. It must be determined whether the tip itself is sufficiently reliable in order to justify the investigative stop." (Parallel citations omitted.) *State v. Williams*, 8th Dist. No. 81364, 2003-Ohio-2647, ¶8-12.

{¶79} Further, "a tip from an identified citizen informant who is the victim or witnesses a crime is presumably reliable, particularly if the citizen relates his or her basis of knowledge." *State v. Gress*, 2d Dist. No. 16899, 1998 Ohio App. LEXIS 2694, *6 (June 19, 1998).

10

**{¶80}** Thus, the first question is whether Dispatcher Lafferty had sufficient specific, articulable facts to form a reasonable suspicion that a crime had occurred. She did. Ms. Kincade fully identified herself when she made her 9-1-1 calls. During the first, she reported a continuous pounding on a neighbor's door, and a woman screaming, at nearly 2:00 a.m. During the second call, she informed the dispatcher that the situation had escalated into a fight between two women. She told the dispatcher that the commotion ended; she reported seeing a woman exit the apartment building to a silver car, and gave a partial license number for that car. The fact that Ms. Kincade did not go to confirm visually the nature of the fight she heard, seems inconsequential in determining whether Dispatcher Lafferty had reasonable suspicion to believe criminal activity was afoot. Ms. Kincade stated that she was afraid to leave her apartment, which was natural under the circumstances. The facts given to the dispatcher, and relayed by her to Officer Short, could at least describe disorderly conduct, in violation of R.C. 2917.11(A)(1) or (2). It might well describe a full-fledged assault.

**{¶81}** Officer Short was arriving at the apartment complex when he received the report that a woman had left the building, and was driving a silver, jeep-like vehicle. He immediately spotted a silver or tan Subaru exiting the parking lot, driven by a woman. It was the only car exiting the parking lot. The car's license plate number, 492 XJT, was fundamentally the same as that showing on his computer screen, 4927 JTM. He was entirely justified in making a brief investigatory stop of that car.

**{¶82}** The first assignment of error lacks merit.

**{¶83}** Ms. Cook's second assignment of error is:

11

{¶84} "Assuming arguendo that State met its burden to demonstrate reasonable suspicion that Ms. Cook had been engaged in criminal activity, the trial court committed reversible error in overruling Ms. Cook's Motion to Suppress since Ms. Cook's right to [be] free from unreasonable seizures outweighed the government's interest in investigating an alleged minor offense that occurred outside the officer's presence and when there was no ongoing concern for public safety."

{¶85} Under this assignment of error, Ms. Cook presents a single issue for review:

{¶86} "[D]id the State's interest in investigating a minor and unspecified noise offense/verbal fight that had occurred outside of the officer's presence and was no longer occurring, justify the seizure of Ms. Cook in her vehicle and subsequent investigatory detention?"

{¶87} In support of this assignment of error, Ms. Cook relies on *State v. Lewis*, 50 Ohio St. 179 (1893), and its progeny. In *Lewis*, the Supreme Court of Ohio held:

{¶88} "Where a breach of the peace is committed in the presence of a marshal of an incorporated village or city, he may, without warrant, arrest the persons who participate therein. If, however, the officer was absent when such offense was committed, and did not appear there until after the affray had ended, public order restored, and the guilty parties had departed from the vicinity, and all the information the officer had of the affray and of the parties to it, was the statements of by-standers who witnessed it, he has no authority in law to pursue and arrest the persons charged with the offense without first obtaining a legal warrant therefor." *Lewis* at the syllabus.

12

{¶89} Ms. Cook notes that the trial court did not specify what crime Officer Short was investigating when he stopped her. She implies that, at worst, the situation described by Ms. Kincade in her 9-1-1 calls could be characterized as disorderly conduct, in violation of R.C. 2917.11(A), a minor misdemeanor, and thus, subject to the strictures of *Lewis*.

{¶90} We respectfully disagree. Ms. Kincade reported first someone banging on a neighbor's door, and a woman screaming. She informed Dispatcher Lafferty that two women were fighting. She told the dispatcher she was scared. It was 2:00 a.m. The uncontradicted testimony of Officer Short was that he had worked in the area where the incident occurred for four to five years; that it is a high crime area, with frequent violent crimes; and, that the particular apartment complex involved is dilapidated, with poor security.

{¶91} Perhaps Ms. Kincade was "merely" a victim of disorderly conduct. R.C. 2917.11 states, in pertinent part:

{¶92} "(A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:

{¶93} "(1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior;

{¶94} "(2) Making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person * * *."

{¶95} As to *her*, the conduct occurring that morning was alarm caused by turbulent behavior, or unreasonable noise. But the conduct described by her – i.e., a

13

fight between two women, following an extended period of one pounding on a door, possibly to gain entrance, at 2:00 a.m. – could easily, for those *involved*, be something far more serious. In terms of whether Officer Short had reasonable suspicion to stop Ms. Cook, and briefly question her regarding the incident, *Lewis* simply does not apply.

{¶96} The second assignment of error lacks merit.

{¶97} The judgment of the Portage County Municipal Court, Kent Division, is affirmed.

{¶98} It is the further order of this court that appellant is assessed costs herein taxed.

{¶99} The Court finds there were reasonable grounds for this appeal.


TIMOTHY P. CANNON, P.J.,

THOMAS R. WRIGHT, J.,

concur.